UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK

**JAMES M. WEST,**

Plaintiff,

-against

**Glenn S. Goord,** Commissioner, Dept. of Corr. Servcs.;
**Stephan Berbardi,** Deputy Commissioner, Policy &Compl-
iance, NYS Dept. of Corr. Servcs.; **Lucien Leclaire,**
Deputy Commissioner, Corr. Facilities, NYS Dept. of
Corr. Servcs.; **Thomas Eagen, Dir. of Inmate Grievance
Program,** NYS Dept. of Corr. Servcs.; **Thomas Poole,**
Supt. of Five Points, NYS Dept. of Corr. Servcs.;
**J. Dennis (J. Doe)**, Regional Grievance Supervisor;
NYS Dept. of Corr. Servcs.; **Janice Henrich,** Inmate
Grievance Prog. Supervisor, NYS Dept. of Corr. Serv-
cs.; **Sgt. Case,** of NYS Dept. of Corr. Servcs.; **Sgt.
Pabon,** of NYS Dept. of Corr. Servcs.; **Sgt. Keeke,** of
NYS Dept. of Corr. Servcs.; **C.O. L. Lauber,** of NYS
Dept. of Corr. Servcs.; **D. Napoli,** Deputy Supt. Secur-
ity, Five Points, NYS Dept. of Corr. Servcs.; **Donald
Selsky,** Dir. of Disciplinary & Impeachment Hearings,
NYS Dept. of Corr. Servcs., in their individual and
personal capacities.

Defendants.

**AMENDED**

**VERIFIED**

**COMPLAINT**

**JURY TRIAL IS**

**DEMANDED**

**1:05-CV000447**

**(RJA) (HBS)**

FILED
2007 NOV 20 PM 3:19

PLAINTIFF, JAMES M. WEST, BEING DULY SWORN, ACCORDING TO LAW, DEPOSES AND SAYS, PURSUANT TO 28 U.S.C., §1746, THAT THE FOLLOWING IS TRUE UNDER THE PENALTY OF PERJURY BELOW:

## I. INTORDUCTION

1. This is a civil action against defendant's seeking redress under 42 U.S.C. §§ 1983 (Deprivation Of Rights), 1985(3) (Depriving Persons of Rights or Privileges), and 1986 (Neglect to Prevent), ADA Act, 42 U.S.C., §12102 (2), applicable statutes, promulgated, thereunder, 28 C.F.R. part 35, and §504 of Rehabilitation Act, 29 U.S.C. §794 Regulations Promulgated Thereunder, 28 C.F.R. 42.503, and Title VII (Job Discrimination) and reason-able attornies fee's.

## II. PROCEDURAL HISTORY

2. Plaintiff James West became confined to a wheelchair by excessive use of force while in the custody of NYC Corrections, which West received inadequate medical care.

3. The State Corrections Dept. refused to accept West on June 1, 1989 in the review of said medical records. June 16, 1989, City Corrections did not send all of West's medical records and State of New York was duped into accepting West by fraud.

3. Plaintiff West was transferred to Green Haven Corr. Facility on November 3, 1990, which to receive extensive physical therapy and rehabil-atation that was never provided at any time.

4. Plaintiff West filed suit after exhausting all administrative reme-dies in the Southern District of New York, which included Civil Contempt proceedings. Magistrate Judge Naomi R. Buchwald (Now Federal Judge) order' Appointment of Counsel, and separation of Civil Contenpt from §1983 issues by de novo by Judge Lewis A. Kaplan, Southern District May 6, 1996. Ex. A.

5. Plaintiff West was illegally discharged from Green Have to Wende Corr. Facility June 19, 1999. Thereafter to Upstate Corr. Facility in 2000, which West's hand splints and wheelchair was taken forcing west to crawl

around on the floor for months with harassment and retaliation.

6. Judge Lewis A. Kaplan, was notified of the treatment of West by an inmate Pittman, which Judge Kaplan responded in letter of July 28, 2000 and ORDER TO SHOW CAUSE. Exhibit B. Later relief granted.

7. Judge Robert J. Ward, Southern District of New York, issues a prelminary injunction, Orders in frutherances returning West's wheelchair along with hand splints that he had at Green Haven, by Order August, 2000, an use of black prohibited use upon West. Exhibit B1.

8. The civil action part of case is before Judge Kaplan and the Civil Contempt Proceedings were before Judge Ward.

9. A trial of the Contempt issues were held before Judge at the U.S. District Court, Southern District of New York, latter part of 2000, 2001, and 2002, which Judge Ward found defendant's guilty of Civil Contempt the 4th day of January, 2002. Judge Ward ORDER'S the "CONDITIONAL DISCHARGE OR-DER FOR JAMES WEST, APPROX. Jan. 31, 2002, to Five Points. Exhibit C.

10. Judge Robert J. Ward, issues a "MEMORANDUM DECISION" March, 2002, which held defendant's in Civil Contempt of denial of physical therapy and violations of Patient Confidentiality. Plaintiff appealed on issues of only nominal damages to U.S. Court of Appeals, Second Circuit.

11. Judge Robert J. Ward, passes away in 2003 (belated Condolences).

12. Judge Richard Conway Casey becomes Court of coordinate jurisdiction of the the case. Judge Casey signs application granted July 16, 2004, ORDER extending the "CONDITIONAL DISCHARGE ORDER FOR JAMES WEST". Exhibit C1.

13. The Us. Court of Appeals, renders "SUMMARY ORDER IN CASE FOR WEST, GRANTING COLLATERAL ESTOPPEL OR RES JUDICATA, ETC., Dec. 12, 2003, Exhibit D.

### III. PRELIMINARY STATEMENT

14. This is a civil action by Plaintiff West to seek redress against the defendant's retaliation for the "EXERCISE OF FREE SPEECH, ADVERSE ACTION FOR PROTECTED CONDUCT, DISCRIMINATION, JOB DISCRIMINATION, AMERICAN'S WITH DISA-BILITIES ACT & REHABILITATION ACT, AND RETALIATION AGAINST PLAINTIFF WEST"S VALID COURT ORDER AND DECISIONS BY A RACIAL ANIMUS. ALSO, A HOSTILE WORKING ENVIRONMENT.

15. The protected conduct was a substantial or motivating factor in the defendant's adverse actions, and meeting of the minds or conspiracy.

16, Defendant's have acted unconstitutionally during the limitations pe-riod by discriminatory acts or discriminatory policy, custom/usage, and acts that possibily took place outside the limitations period that are related.

17. Plaintiff  West will invoke the "continuing violation doctrine".

### IV. JURISDICTION AND VENUE

18. Jurisdiction of this court is laid down pursuant to 28 U.S.C., §§ 1331 and 28 U.S.C. 1334 (a), (3), and (4).

19. The matter in controversy arises under § 504 of the Rehabilitation Act, the Americans with Disabilities Act, §§ 1983, 1985(3), 1986, Title VII, 1st and 14th Ammendments to u.S. Constitution. But limited to just this.

20. Venue is properly laid down in the Western District of New York pur-suant to 28 U.S.C. § 1391(b), (2).

### V. PARTIES

21. Plaintiff James M. West (hereinafter referred to as: WEST) is a pr-isoner in the custody of the DOCS, presently held at Five Points. He is a individual with a disability as defined by the ADA and §504 of the Rehabila-tion Act. His paraplegia is a physical impairment that substantially limits him in performing numerous major life activities, including caring for him-self, performing manual tasks, walking, and working.

22. Defendant Glenn S. Goord, former Commissioner of the DOCS, at all times relevant tothis action, was responsible for the operation and adminis-tration of all correctional facilities, New York State, is sues in his indi-vivdual capacity.

23. Defendant Stephan Bernardi, Deputy Commissioner of Policy & Complia-ance, at all times relevant to this action was responsible for ensuring Pol-

icy & Compliance in all state prisons comply with §504 of Rehabilitation and Americans with Disabilities Act. He is a member of the C.O.R.C. (Central Office Review Committee) on grievance appeals to C.O.R.C., is sued in his individual and official capacity.

24. <u>Defendant Lucien Leclaire</u>, Deputy Commissioner of Corr. Facilities, at all relevant times to this action, was a member of the C.O.R.C. (Central Office Review Committee) on grievance appeals to C.O.R.C., is sued in his individual capacity.

25. <u>Defendant Thomas Eagen</u>, Director of Inmate Grievance Program for all State Prisons in New York, of the DOCS, Designated by Def. Goord for his position, is sued in his individual capacity.

26. <u>Defendant Thomas Poole</u>, Supt. at Five Points of the DOCS, all times relevant to this action is sued in his individual capacity.

27. <u>Defendant J. Dennis (J. Doe)</u>, Regional Grievance Supervisor of the DOCS, at all time relevant to this action, is sued in individual capacity.

28. <u>Defendant Janice Henrich</u>, Inmate Grievance Program Supervisor, of the DOCS, at all times relevant to this action, is sued in her individual capacity.

29. <u>Defendant Case</u>, Sgt., of the DOCS, at all time relevant to this action, is sued in his individual capacity.

30. <u>Defendant Pabon</u>, Sgt., of the DOCS, at all times relevant to this action, is sued in his individual capacity.

31. <u>Defendant Keefe</u>, Sgt. of the DOCS, at all relevant times to this action, is sued in his individual capacity.

32. <u>Defendant Lisa Lauber</u>, Corr. Officer of the DOCS, at all relevant times to this action, is sued in her individual capacity.

33. Defendant David Napoli, Deputy Supt. of Security, of the DOCS, at all time relevant to this action, is sued in his individual capacity.

34. <u>Defendant Donald Selsky</u>, Director of Disciplinary & Impeachment Hearings under the Tier III System, of the DOCS, at all time relevant to this action, is sued in his individual capacity.

**35. Defendant New York State Dept. of Correctional Services (hereinafter is referred to as: DOCS) is a agency created by New York State for the purpose of operating Correctional Facilities within the state, and DOCS receives Federal Assistance.**

**36. PLAINTIFF WEST HEREINAFTER WILL BE REFERRED TO AS: WEST.**

**37. PLAINTIFF WEST HAS EXHAUSTED ALL ADMINISTRATIVE REMEDIES.**

**38. The word Defendant is referred to hereinafter as: def. or def.'s.**

**39. The words Inmate Grievance Resolution Committe is (hereinafter is referred to as: IGRC).**

**40.Staff Grievance Representatives are referred (hereinafter: para. 38.**

**41. All defendant's are referred by their last names, hereinafter.**

## VI. FACTUAL ALLEGATIONS

42. West was transferred to Five Points on a "CONDITIONAL DISCHARGE ORDER FOR JAMES WEST" by Judge Robert J. Ward, stating rights, privileges, an immunities on January 31, 2002. Exhibit C.

43. West arrived at Five Points on Feb. 18, 2002, approx., with Everest & Jennings (Classic Premier)wheelchair, over noght hand splints, Lumbro sacral back brace, thumb splint, wheelchair pillow, and hard splint (1t. hand).

44. The wheelchair was had special rims with special rings or projectors to ambulate short distances. The wheelchair was to be maintained in good repair at all times pursuant to court order.

45. after West's arrival at Five Points West was being denied adequate supply of catheter's for self-catherization in violation of court order by deliberate indifference.

45. West numerous grievances against the Grievance Program as corrupt, bogus against def.'s Poole, Henrich, Eagen, CORC (Bernardi & Leclaire), and Goord in 2002.

46. Inmates asked West to run in the IGRC Election which West ran and was illegally cheated out of votes by racial preferences of IGRC Rep.'s.

47. West filed the following grievances in 2002 below:

a. FPT-4507-02 Wants copies of grievances and responses;
b. FPT-____-02 Inadequate Grievance Program;
c. FPT-5187-02 IGRC Fraudulent Procedure;
d. FPT-5844-02 IGRC Not Following Directive 4040
   Names Def.'s Eagen, J. Dennis (J. Doe), and others;
e. FPT-5955-02 IGRC Not Following Directive 4040
   Names Henrich, Jane Doe (J. Dennis), Goord, Poole, Eagen, and C.O.;
f. FPT-6036-02 Five Points Running False IGRC
   Names Goord, Eagen, Poole, Exec. Team, Henrich, and Ms. J. Dennis; and
g. FPT-6150-02 IGRC Bogus Operation. Names Poole, Eagen, Goord, Exec. Team,
   CORC (Deputy Commissioner's), Bernardi, Henrich, and J. Dennis (J. Doe).

48. Prior to West's winning the IGRC Election June 2003, white & latin IGRC Rep.'s were allowed access/movement within the institution by a grievance filed by Claire Wilson, FPT-9177-03, and approved.

49. Def.'s Poole and Eagan formalized a approved procedure on access/movement within the institution pursuant to Directive 4040 for white & latin IGRC Rep.s and IGRC Clerk's, Oct. 10, 2002, and attended Orientation.

50. Prior to West's election as a IGRC Rep. he had seen White & Latin IGRC Rep.'s and Clerk's come to his housing unit to speak to grievant's who were keeplocked and do limited investigations.

51. This formalized policy by def.'s Poole and Eagen allowed white & latin IGRC Rep.'s and Clerk's to catch up on their workload and go to the lunch period before all other housing units adn back to work.

52. Prior to West and Shariff's start in the IGRC Office as newly elected Rep.'s the def.'s Poole, Eagen, J. Dennis (J. Doe), Bernardi, Leclaire, and Henrich put in a discriminatory policy against the disabled, West.

53. The discriminatory policy and acts of def.'a denied West and Shariff the same benefits offered and allowed to non-disabled white & latin workers in the IGRC Office prior to them by deliberate indifference

54. Def.'s Poole, Eagen, J. Dennis (J. Doe), Bernardi, Leclaire and Henrich by a racial animus denied West and Shariff equal rights and benifits afforded to white & latin worker in IGRC Office prior to their election.

55. Def.'s Poole, Eagen, J. Dennis (J. Doe), Bernardi, Leclaire, Henrich did not want it exposed that they in a meeting of the minds were running an fruadulent grievance program abusing federal funds by deliberate indifference.

56. Def. Goord failed to properly supervise the defendant's Poole, Eagen, J. Dennis (J. Doe), Bernardi, Leclaire, Henrich, Case, Pabon, Zehr, Keefe, and Lauber by deliberate indifference in conspiracy against disabled inmates.

57. West & Shariff, being black and wheelchair bound under definition of the ADA & Rehabilitation Act were conspired against in their job by discriminatory acts or discriminatory policy, custon/usage by racial animus with deliberate indifference.

58. West found many improper grievances procedures with shariff described below:

1. Grievants denied Advisor of Assistance, Per Dir. 4040;
2. Grievant's falsely informed on Non-Grievable Issues, which stated, HOWVER, THE POLICIES RULES, AND PROCEDURES OF ANY OF THESE PROGRAMS OR PROCEDURES MAY BE THE SUBJECT OF A GRIEVANCE:
3. Grievant's denied reasonable accomodations by false, discriminatory by Five Points Falsification of DOCS Records, discriminatory report and investigations;
4. Reasonable Accomodations: Reasonable accomodations shall include; but not be limited to, meetings with inmates at acessible sites!
5. Corrupt IGRC Chairperson Selection by deliberate indifference;
6. Grievance Clerk's illegally doing IGRC Rep.'s duties to burden them with excessive work by deliberate indifference;
7. Violation of Firts Step procedures numbering and logging by Clerk;
8. Illegal procedure implemented in Informal Resolution of grievances

a. The procedure that the representatives of the IGRC (Staff & Inmates) shall have up to seven (7) working days to review a grievance and resolve it informally. If the matter is so resolved to the satisfaction of the grievant, the resolution and the grievants consent must be entered on the inmate grievance complaint form.

b. West and Shariff as IGRC Inmate Rep.'s were coerced into doing about 75% to 80% of the informal grievances.

c. That, def.'s Case, Pabon, Zehr, Keefe, and Lauber never did the same equal amount of Informal Grievances by a racial animus and discriminatory act, acts or discriminatory policy.

d. At IGRC Hearing def. Lauber was allowed to always act in a avasarial manner of pro-administration, never being fleible by gross negligence and deliberate indifference.

e. Def.'s Case, Pabon, Zehr, and Keefe allowed def. Lauber's conduct in a deliberate indifferent manner, along with def. Henrich, who witnesses this on numerous occassions by consent and condoning.

f. During committee decisions/recommendation def. Lauber intentionally would enter the province of West's and Shariff's decisions by a racial animus if West & Shariff did not agree with her or def.'s Case, Pabon, Zehr, and keefe by deliberate indifference.

g. Def. Poole was always untimely by deliberate indifference. He spent more time on golf course than doing his job by deliberate indifference from information and belief.

h. VI. Procedural Safegaurds were violated on reprisals, IGRC Access/Movement Within the Institution to subd. D., (1), (2), and (3) by deliberate indifference an discriminatory acts or policy.

i. IGRC Interviews of Employee's were discriminatorily denied by discriminatory acts or discriminatory policy of racial animus of deliberate indifference, as to subd. (1) and (2).Interviews over the telephone were never signed by the responder or direct party grieved.

j. Time Limits violated by def. Poole and condoned and consented to by all named def.'s by deliberate indifference.

k. File Maintenance Confidentiality was violated in a conspiracy by Def. Henrich with Ms. Brignall, consented and condoned by def/'s Eagan, Poole, J. Dennis, Case, Pabon Zehr, Keefe, and Lauber by deliberate indifference, daily basis.

l. Keeplocks and SHU inmates were daily denied full due process in fraudulent grievance procedures by deliberate indifference.

m. Harassment grievances were intentionally miscoded by Def. Henrich in meeting of the minds with Correction Officer's Union. Also, known by def.'s Poole, Case, J. Dennis, Zehr, Keefe, Pabon, and Lauber by deliberate indifference consenting and condoning said.

n. All subdivisions of the harassment protocols were violated daily by def's Henrich, J. Dennis, Poole, Eagen, Case, Zehr, Pabon, keefe, and Lauber by gross disregard and deliberate indifference.

0. Falsification on harassment, discrimination or unlawful discrimination grievances investions along retaliation investigations were a retaliation false investigation by bad faith intentions and cover-up by discriminatory policy.

59. West & Shariff spoke to def. Henrich about literacy rate in prison where a lot of inmates needed help in writing grievances, which she said it would take up to much time by deliberate indifference.

60. West wrote to def. Henrich on role of ADVISOR in grievances, which she turned into a grievance, written on JUly 2, 2003 deliberately indifferent to by racial animus.

61. West requested desk wheelchair accessible to Def.'s Henrich, Case, Lauber, Pabon, Zehr, and keefe on more that three occassions and they were deliberately indifferent to by a racial animus.

62. Other white & latin IGRC Rep.'s non-disabled had desk's that were usable for them but West was discriminated by deliberated indifference by

discriminate acts or discriminate policy against handicapped by custom.

63. West and Shariff spoke to def.'s Henrich, Case, and Lauber on the issue of access/movement within the institution to properly and effectively perform our work, which we were denied by deliberate indifference

64. the denial above in paragraph 63 was done by reckless disregard an a racial animus against disabled IGRC Rep.'s West and Shariff.

65. West spoke to def.'s Zehr, Pabon, and keefe when on to work IGRC Office were told that West & Shariff that we need access within facility to perform our job's properly and were denied by deliberate indifference by a racial animus.

66. West made oral complaints to def.'s Henrich, Case, Zehr, Pabon, keefe Lauber that they are making complaints that I do not work fast enough, but West is refused wheelchair accessible desk by deliberate indifference.

67. West complains to def.'s mentioned in paragrah 63 and 65 that he is being discriminated against by discriminatory acts or discriminatory policy by retaliatory means for being a whistle blower of improper IGRC procedures.

68. West made oral complaint pursuant to Corr. Law § 138, subd. 4, 5, and 6, which def.'s Henrich, Case, Lauber, Zehr, Pabon, and keefe were deliberately indifferent to by racial motivated animus.

69. Def. Henrich told West and Shariff that there would not be any access/movement within the Institution as done for prior white & latin IGRC Rep.'s and IGRC Clerk's by deliberate indifference.

70. Def.'s Poole, J. Dennis (J. Doe), Henrich, and Eagen conspired agast the disabled IGRC Rep.'s West & Shariff by a racial animus in allowing prior white & latin IGRC Rep.'s and Clerk's procedures but not us was a racially motivated animus situation.

71. West made oral complaints to def. Henrich of the ongoing illegally and unconstitutional procedure's for selection of herself as Chairperson of the IGRC was deliberate indifference to due process.

72. def. Henrich told West to stop making complaints oh matter raised in paragraph 71 or West will be dealt with by racial animus

73. West told Henrich that he had a right to free speech on misconduct of the grievance programs violating use of federal funds, which def. told West that he was nobody but a inmate by deliberate indifference.

74. West & Shariff spoke to Def. Henrich about miscoding of numerous grievances on discrimination, ADA & Rehab. Act, harassment, retaliation by DOCS personnel. We were told by deliberate indifference to shut up on this.

75. West derided by def.'s Henrich and Lauber as a cripple 7 handicapped person in his employment as a IGRC Rep. by a racial animus upon Shariff and goin to speak to them by deliberate indifference.

76. Def. Henrich and Lauber continue to harass West for exercise of his 1st Amend rights of free speech on misconduct, protected conduct by racial animus and deliberate indifference daily.

77. West is called daily to Def. Henrich's office which def. Lauber is present, which West is chastised for not working fast enough in his work as a handicapped and disabled person by deliberate indifferece by def.'s.

78. Def.'s Henrich and Lauber laughed and ridiculed West for no legally or justifiable reason than to humilate, harass and intimidate for exercise of 1st amend right by racial animus and deliberate indifference.

79. Letter's West wrote to def. Henrich were turned into a grievance by her on one occassion, which months later West filed complaint on Chairperson issue for def. delayed conduct by deliberate indifference by racial animus.

80. Def.'s Goord, Bernardi, Leclaire, Eagen, J. Dennis (J. Doe), an Supt. Poole knew def. Henrich had racial preference for white and latin inmate worker's over black inmates from the Santiago v. Miles , litigation.

81. Def.'s Goord and Eagen promoted def. Henrich for her discriminatory racial preference in white & latin IGRC worker's after Elmira case, which they promoted def. Henrich as a reward by deliberate indifference.

82. def,'s Goord. and Eagen knew that def's Henrich, Lauber, Case, Zehr, Pabon, and keefe had poor impulse control with psychological or psychiatric

history of treatment.

83. West was called to def.'s Henrich office with Lauber present be-
to threaten West by retaliatory harassment for misconduct complaints on
improper grievances procedures by deliberate indifference of 1st amend.

84. West & Shariff were regularly called in Def. Henrich's office a-
long with def. Lauber for campaign of retaliatiory intimidation of 1st
amend rights by gross recklessness and deliberate indifference.

85. At all times during limitations period Def.'s Henrich, Lauber, Case,
Zehr, Pabon, and Keefe used a campaign of retaliatory intimidation of West'
1st amend. rights by racial animus and deliberate indifference.

86. Def.'s in paragraph 85 created a retaliatory hostile working enviro-
nment towards West by each others consent and condonin by a conspiracy to
chill West's fortitude  of his 1st amend rights by deliberate indifference.

87. Shariff continued to support West and tell West not to quit while
present during 79% of all these encounters because he was included in them
by a racial animus and deliberate indifference.

88. Some of the filed grievances by West below:
a. FPT-8058-03 PERMIT ME TO DO MY JOB. Date 7/2/03   filed 7/9/03.
   def. Henrich named therein.
b. FPT-8099-03 RETALIATION OF IGRC Rep.'s dated 7/8/03 file 7/8/03 approx.
   def.'s Henrich and Lauber.
c. FPT-8350-03 RETALIATION FOR FILING GRIEVANCE. 7/28/03 filed 8/11/03.
   names Henrich and Lauber, etc.
d. FPT-8637-03 FALSE COUNSEL MEMO"S. dated 9/3/03 filed  9/16/03.
   Names Def.'s Henrich, Lauber, Weingartner, Supt. Poole, T. Eagen, Comm-
   issioner, J. Dennis (J. Doe). Also, def.'s IGRC Sgt.'s including Case,
Pabon, Zehr, Keefe, and other's etc., and all Deputy Supt.'s at Five Points.
e. FPT-8636-0# FOLLOW 4040. DATED (9/3/03 filed 9/16/03.
   West & Shariff forced to do Lauber's, and IGRC Staff Sgt.'s Case, Pabon.
   Zehr, and Keefe's job. Names Bernardi and Annucci (CORC) also.
f. FPT-8797-03 C.O.OPENS THE IGRC MAIL. dated 9/3/03 filed 9/24/03.
   Approx. names all def.'s Henrich, Lauber, J.Dennis (J. Doe), Eagen,Poole.
g. FPT-8710-03 FALSE COUNSEL MEMO. dated 9/4/03 filed 9/24/03.
   Names Henrich and Lauber. Illegal made new rules applied to black IGRC
   Rep.'s West & Shariff in violation of Administrative Procedure Act. Also,
   issue of discrimination against handicapped.
h. FPT-8709-03 FALSE FORMAL COUNSELING. dated 9/4/03 filed 9/24/03.
   Henrich and Lauber named.
i. FPT-8636 GRIEVANCES ARE NOT PROPERLY CODED PER DIR. 4040. 9/4/04///9/16/0:
   names Henrich, Lauber, IGRC Sgt's (PLURAL), J. Dennis (J. Doe), Eagen,
   Poole, and Goord.
j. FPT-8705-03 DENIAL OF IGRC REP.'s LETTER FOR IGRC CHAIRPERSON SELECTION.
   Letter to def. Henrich delayed & grievance filed. mentions Lauber.
k. Fpt-____-03 NOT PROPERLY PROCESSED. date 9/10/03   filed 9/16/03.
   names def. henrich and lauber.
l. FPT-8693-03 NURSE ADMIN. FILES RESPONSE TO GRIEVANCES INSTEAD OF PERSONS
   GRIEVED, ETC. DATE 9/17/03   filed 9/19/03. names def. Henrich.
m. FPT 8662-03 HOLDING UP GRIEVANCES, DELAYING NUMBERING AND LOGGING BY ILL-
   EGAL & IMPROPER PROCEDURES BY LAUBER & HENRICH. DATE 9/17/03 file 9/19/03.
   names Prison Admin. , State Commission of Corr., Eagan, CORC (Deputy Com-
   missioners), J. Dennis (J. Doe), and def.'s IGRC Sgt.'s named. grievance
   mailed to David Napoli.
n. FPT-8706-03 CONSPIRACY BY DOCS. DATE  9/19/03  filed 9/24/03.
   names Henrich & Lauber. Copy mailed to D. Napoli inmate mailbox rule.
o. FPT-8781-03 GRIEVANCE RESPONSE EXCEED TIME FRAME. DATE 9/19/file 9/24/03.
   names Poole, memtions Henrich and Lauber, and Bernardi.
p. FPT-____-03 HOSTILE WORKING ENVIRONMENT, ETC.  DATE 9/19/03. was not pro-
   perly processed or destroyed by def. lauber, henrich by conspiracy, etc.

89. all named def.'s were personally involved or knowledge of issues and
acts complained ofwere deliberetely indifferent towards West.

90. Def. J. Dennis had West come to def.'s Henrich's office, which he spoke to her about earlier grievances filed against grievance program in its denial of due process within grievance prog. bydeliberate indifferenc.

91 Def. Dennis in para. 90 was told of def. Henrich refusing to file my grievance s by a racial animus and deliberate indifference.

92. def, Dennis took no corrective, remedial, nor disciplinary action on West's oral complaints against Henrich by deliberate indifference.

93. In seeing def. Dennis in 2003 after election as IGRC Rep. West told her of his complaints of filed grievances against grievance prog.and the d-eef.'s responsible by deliberate indifference.

94. West told def. dennis that he was being retaliated against for filing grievances against def,'s Henrich, Poole, Case, Pabon, Zehr, Keefe, Lauber, prison administraion Staff, Goord, Bernardi, Eagen, and Leclaire for below:

    a. Retaliation for protected conduct on free speech on misconduct:

    b. Retaliation for exercise of 1st amend. rights;

    c. Retaliation for filing grievances against her and DOCS employee's:

    d. Retaliation for whistleblowing on grievance prog. corruption;

    e. reckless callousness of a evil machinations to use grievance prog. to override 1st amend. court order's that are valid;

    f. Retaliatory harassment, discriminatory acts or policies, and intimid-ation of 1st amend. rights;

    g. retaliatory discriminatory acts or policies deny West Directive 4040 access/movement within inst. as white & latin IGRC Rep.'s by racial animus of deliberate indifference;

    h. retaliation discrimination of disabled of benefits afforded to white & latin IGRC Rep.'s in gievance prog who are non-disabled. But denied to disabled in violation of ADA & Rahab. Act, and Title VII by a rac-ial animus of deliberate indifference, of job discrimination.

    i. Daily harassment, retaliation, and intimidation of 1st amend rights.

    j. Ongoing conspiracy against West by discriminatory acts or polices in denial of wheelchair accessible desk;

    k. Retaliatory False Inmate Notification Counseling, Formal Counselings, and Observations Report for filing grievances;

    l. West being derided as a cripple by named def.'s herein named.

    m. West derided as a cripple who can't work fast enough by his handicap-ped condition daily by racial animus.

    n. Def.'s named created a hostile working environment for West.

95. West told def. Dennis this all on the herein para. 94 an subparts,in-which she was deliberately indifferent to of all def.'s who had been grieved

96. Def. Dennis personally participated in the violations of def.'s Henr-ich, Poole, Case, Pabon, Zehr, Keefe, Lauber, and Eagen in failing to take corrective, remedial, nor disciplinary action by deliberate indifference.

97. Def. Dennis as supervisor created a intentional discriminate acts or policy or unstated policy of tolerating the acts against West by racial an-imus of deliberate indifference.

98. As a supervisor, def. Dennis created a policy or custom under which the violations against West occurred by deliberate indifference.

99. Def. Dennis was deliberarely indifferent to West 1st amend rights by failing intentionally to act on information of const rights were being vio-lated by deliberate indifference by a racial animus.

100. Ineffectivenes of non-discipline of West allegations could lead a ra-tional factfinder to conclude that def. Dennis knowingly condoned & ratified actions of Def.'s Henrich, Poole, Case, Pabon, Zehr, Keefe, lauber, and Eag-en that would cause const. injuries by deliberate indifference.

101. A reasobale supervisor charged with duties def. Dennis bore, would have understood she could be held const. liable for failing to identify and take remedial action concerning def.'s named in para. 100.

102. Def. Dennis intentionally failed to correct unconstitutional retalia-tory practices against 1st amend rights by a racial animus and deliberate in-difference.

103. Def. Dennis intentionally refused to make a thorough investigation on West's grievances and allegations by deliberate indifference.

in his employment as disabled IGRC Rep. by def. Dennis afeter knowledge of it by a racial animus by a reckless or callous indifference towards West.

104. Def. Dennis saw West's wheelchair was not maintained in good repair, denial of hand splints, patient confidentiality, assigned pusher, informed consent, handicapped headphones to handicapped cassette player taken by grievance decisons that were retaliatory of 1st amend. rights of West.

105 Def. Dennis condoned & consented to illegl usurping of valid court order's by illegal grievance procedures by deliberate indifference of a racial animus against West 1st amend rights to punish him.

106. Def. Eagen was Director of DOCS Grievance Program which he was responsible for theproper functioning of federal assistance to prog, are not abused by retaliation, discrimination acts or policies against handicapped.

107. West fully reiterates paragraphs 88. and subparts a.to p. as they apply to complaints of def. Eagen and knowledge of all issues alleged West's grievances, herein.

108. Def. Eagen allowed a corrupt and improperly run grievance program at Five Points since its opening which denied due process against the Prisoners Litigation Reform Act of reprisals for filing grievances.

109. Def. acted with reckless or callous indifference towards West 1st amend. rights, protected conduct as IGRC Rep., free speech, and against valid court orders to punish West for by deliberate indifference.

110. def. Eagen condoned and consented to the actions complained of by West of 1st amend , discriminatory acts or policies, job discrimintion by a racial animus of deliberate indifference.

111. def. Eagen conspired in the acts complained of West by a meeting of the minds with def.'s Dennis Poole, Henrich, Case, Pabon, Zehr, Keefe, and Lauber by a racial animus and deliberate indifference.

112. From the beginning of West's election as IGRC Rep. def. eagen did conspire with def.'s in paragraph 111 to set West up for retaliatory acts, discrimination, racially motivated harassment and intimidation of 1st amend. rights by deliberate idifference.

113. Def. Eagen conspired to provide a benefit to whit & latin IGRC Rep.s with def.'s Poole, Dennis, and Henrich on access/movement within inst. but, arbitrarily with callous indifference denied West by deliberate indifference.

114. def. Eagen knew that §138 of Corr. Law creates non-discretionary duty and intentional failure cause const. deprivation by a racial animus and deliberate indifference on retaliation for filing grievances by West.

115. Supervisory def. Eagen knew of should have known of actual or potential misconduct, retaliation, discriminatory acts against disabled alleged by West failed to prevent or correct by deliberate indifference.

116. def. Eagen knew of the mistreatment of West by subordinates uniformly supressed that information though well aware concealed conduct by a meeting of the minds against West by cover-up of deliberate indifference.

117. it is inferred from def. Eagen's inaction from circumstances of the actions of a discriminate acts or policy to properly train, supervise, and discipline subordinates was intentional deliberate indifference.

118. def. Eagen intentionally failed to make a thorough investigation independent of Five Points of West's grievances by a racial animus of deliberate indifference, which he was part of conspiracy against West.

119. def. Eagen inaction and failure to punish subordinates by allegation asserted by West confirmed a unstated discriminatory acts or policy of discrimination, retaliation an intimidation of 1st amend. rights of West.

120. As a person who sat on CORC appeals of grievances by West he condoned, ratified, and encouraged retaliation and discrimination against West by a racial animus with deliberate indifference.

121. def. Eagen knowledge of a pattern or practice of unconstitutional violations West's 1st amend rights, ADA & Rehab. Act, Title VII, valid court orders portrays a inaction to correct or prevent intentionally deliberately difference.

122. West fully reiterates paragraphs 47, a thru g, paragraphs 49-60, 62 70, 81, 88 thru 89, and 100. Along with Exhibits #88, a to p, and 1 thru 13

as they apply to def. Poole as Superintendent and co-conspirator with the def.'s Eagen, Dennis, and Henrich, Case, Pabon, Zehr, Keefe, and Lauber.

123. def. Poole had notice of all West's grievances in 2002 and 2003 on a impermissible grievance prog that infringed upon 1st amend. rights, free speech, and protected conduct by racial animus and deliberate indifference.

124. def. Poole within the limitations and continuing violation doctrine conspired with def.'s Henrich, lauber, Case, Pabon, Zehr, and Keefe to illegally overide valid court orders by deliberate indifference towards West.

125. def, Poole retaliated against West for filing grievances against him for running a deliberately indifferent grievance prog by a racially animus and retaliated against West in violation of well established law & statutes.

126. A inference of the early and later grievances show def Poole, bore, some responsibility for the alleged retaliation, discriminatory acts or polices against West by deliberate indifference.

127. def. Poole's violation of statutory duty which caused or permitted the violations of West's 1st amend. rights, discriminatory acts or policies and retaliation by a racial animus and deliberate indifference.

128. def. Poole had a statutory duty to ensure court ordered decisions are adhered to and the intentional failure to perform that duty for West is sufficient for liability by racial animus, and deliberate indifference.

129. def. Poole conspired against West's duties a IGRC Rep. because he was black and disabled by racial animus by denying West access/movement within the Inst. as prior white & latin IGRC Rep.'s in violation of the ADA & Rehab. Act, and Title VII by deliberate indifference.

130. West was treated differently from non-disabled white & latin IGRC Rep.'s because he was disabled by a racial animus of reckless or callous indifference in deliberate indifference by def. Poole.

131. def. Poole knew of mistreatment of West uniformly missuppressed the information though well aware concealed retaliatory & discriminatory acts by meeting of the minds with named subordinates by deliberate indifference.

132. def. Poole's failure to punish Henrich, Case, Lauber, Pabon, Zehr, and Keefe confirmed the existence of a unstated discriminatory acts or polices of toleration of against West by deliberate indifference.

133. def. Poole's personal involvement as supervisory official of subordinates Henrich, Case, Pabon, Zehr, Keefe, and Lauber's is established by the following:

a. def. directly participated in the violations by intentional coverup of grievances filed by West by racial animus with deliberate indifference

b. Def. intentionally failed to correct or remedy violations after numerous grievances by West was informed.

c. Created a intentional discriminatory acts or policies for white & latin IGRC Rep.'s over black and disabled IGRC Rep.'s in violation of ADA & Rehab. Act, Title VII, 1st amend., retaliation by deliberate indifference.

d. Created a policy or custom under which violations violations occurred

e. was deliberatedly indifferent to 1st amend. rights & valid court orders and applications granted by federal Judge by deliberate indifference.

f. displayed a reckless or callous in difference in supervising Henrich, Case, Pabon, Zehr, Keefe, and Lauber.

g. deliberately indifferent to const. rights being violated.

h. knowledge of a pattern of unconstitutional violations and failure to correct or prevent intentionally.

i. failure to supervise intentionally all def.'s named at five Points under his supervisor authority by deliberate indifference.

j. failed to investigate to determine who committed discriminate acts of new rules in violation of Administrate Procedure Act for ony disable IGRC Rep.'s by a unstated policy of toleration of deliberate indifference, of § 112 of New York Correction Law.

134. Def.'s Bernard & Leclaire are Deputy Commissioners of the DOCS, as 1) of Policy and Compliance, and 2) of Correctional Facilities, are supervisory positions over named def.'s at Five Points.

135. Def.'s Bernardi & Leclaire intentionally failed to proerly supervise def.'s Eagen, Dennis, Henrich, Case. Pabon, Zehr, Keffe, and Lauber

including def. Poole by a racial animus of West by deliberate indifference.

136. Pessonal involvement of def.'s Bernardi & Lecaire is established by the folowing:

1) directly participated in the violation of CONDITIONAL DISCHARGE ORDER FOR JAMES WEST BY JUDGE ROBERT J. WARD BY DELIBERATE INDIFFERENCE BY AN MEETING OF THE MINDS WITH DEF.'S NAMED AT FIVE POINTS.

2. def.'s received numerous grievances and letter(s) from West which they heard appeals a CORC members.

3. they condoned and consented to retaliationinvestigations which were false by a racial animus towards West by deliberate indifference

4. West reiterates paragraphs 42-134 as more fully stated in applying to def.'s Bernardi & Leclaire's deliberate indifference at all times herein.

5. def.'s directly participated in the discriminatory acts or policies violations of West's 1st amend rights of free speech on misconduct, protected conduct as IGRC Rep., ADA & Rehab. Act, Title VII by an racial animus.

6. Condoned and consented a discriminate policy of non-disabled white & latin IGRC Rep.'s over black disabled IGRC Rep.'s for access/movement within the institution by racial animus of deliberate indifference.

7. condoned and consented to discriminate acts of denial of wheelchair accessible desk for West a disabled person by deliberate indifference.

8. Condoned and consented of a discriminate policy of harassment of the disabled or handicapped because West did not work fast enough because his hands were handicapped to vast degree by deliberate indifference.

9. failure to correcto or prevent retaliatory acts for filing grievances.

10. intentionally failure to correct unconstitutional practices of retaliation of 1st amend. rights.

11. knowledge of a pattern or practice of unconstitutional violations of racially motivated harassment, intimidation and threats for exercise of 1st amend rights, ADA & Rehab. Act, Title VII, Job Discrimination, and a Hostile working Environment towards disabled IGRC Rep.'s deliberately indifferent.

12. Created a unstated policy of toleration of acts complained of.

13. Created a policy of custom which violations occurred under.

14. displayed a reckless or callous indifference in supervising subordinates who committed the violations.

15. def.'s had a statutory duty by their working titles to correct or prevent because they condoned, consent intentionally or ratified and encouraged retaliation by deliberate indifference

16. Def.'s condoned, and consented to illegal made fules that singled out the disable over the non-disable IGRC Rep.'s of Clerk's by a discriminate act or policy unstated by a racial animus by deliberate indifference.

17. def. knew of the mistreatment of West uniformly missuppressed that information by cover-up, though well aware concealed conduct by a meeting of the minds with named Five Points named def.'s by deliberate indifference.

18. it can be inferred from the circumstances of this action of discriminatory acts or policy on failure to properly train and supervise or discipline by def.'s was intentional by deliberate indifference.

19. Def.'s knowingly or intentionally refused to make a thorough independent investigation of West's grievances by deliberate indifference.

20 . def.'s in a meeting of the minds with def.'s at Five Points conspired to punish West for successful litigation against DOCS intended to punish without due process.

21. def.'s condoned the taking of West's ordered hand splints thru CORC decisions, wheelchair with special projectors because federal Judge made defendant's replace West's wheechair in not maintaining it in good repair by deliberate indifference..

22. Thru illegal CORC decisions def.'s violated court order on patient confidentiality uphrld by Second Circuit by SUMMARY ORDER that were made to punish West exercise of 1st amend rights.

23. def. violated West's rights on continuing violation doctrine to the taking of West's wheelchair by not maintaining it in good repair by their ongoing bad acts of a racial animus and deliberate indifference.

137. On West writing to Govenor, Commission of Investigation & State Commission of Corr. for a investigation of corrupt grievance practices at the prison, and Inspector General there was a adverse action. Ex. R2,R4,R5 and R8.

138. def.'s Eagen, Henrich, Poole, J. Dennis, Napoli, Case, Lauber had a meeting of the minds to retaliatory file false impeachment charges against West in violationof lst amend. and § 138 of Corr. Law by racial animus.

139. West served impeachment charges Oct. 21, 2003, which were not file with N.Y. Secretary of State in violation of Administrative Procedure Act on filing of DOCS Agency Rules of Inmate Rules by deliberate indifference.

140. West was assigned Inmate Assistant. Mr. Pittman.

141. Impeachment Hearing started  Oct. 27, 03, before assistance complete

142. West asked for presence of Inmate Assistant to make appeal record was denied by def. Napoli by deliberate indifference.

143. West forced to statt hearing unprepared by deliberate indifference.

144. West called witnesses Shariff, C. Wilson, and Gonzalez, IGRC workers who refuted all charges against West. They told of discrimination, retaliation, harassment, West denied wheelchair accessible desk.

145. West denied material witness, Inmate Huck #02B0941 & Milland who did lock in same housing unit, who have refuted charges, against West. West was not provided a written refusal Huck or Milland by def. Napoli.

146. West was denied due process under Dir. 4932, §§ 253.3(a)(b),254.6(a) and 251-4.1 was denied due process by reckless & callious indifference.

147. West denied Def.'s Dennis, Eagen, Goord, Bernardi, Patterson & Annucci stating: "NO KNOWLEDGE OF ISSUES OR HEARING", which was retaliatory an false in furtherance of conspiracy by def. napoli.

148. def.'s named above are sued herein, named in grievances, an received letter of West's complaints in action. Exhibits Z1, Z2, and Z3. Also, Ex.Z4.

149. Def. Napoli deny's himself, def. Poole & Weingartner as witnesses by a reckless & callous indifference towards West by racial animus.

150. Def. Naploi states to above para. 149 that he nor above NO DIRECT KNOWLEDGE OF YOUR IGRC Activities or hearing on impeachment. Exhibits 88(a) thru 88(p), R1, Ex. 1 thru 12 show profound lies of callous indifference.

151 West mailed exhibts 88(n) & 88(p) to def. Napoli. Also, exhibits 1a, and 12 more that prtray Napoli as a chronological liar in retaliatory falsification of hearing records in the intentional denial of due process.

151. called def.'s Henrich & Lauber as witnesses which def. naploi at all times interrupted to change flow of West questions intentional.

152. def. Lauber told def. Napoli that she had confidential information against West which she would give to def. Napoli after he finshes with West.

153. Def. Naploi in adjourning hearing took def. Lauber back into the hearing room to talk of confidential information without electronic recording pursuant to Dir. 4932, which had not been afforded to West when served initial charges denied due process by deliberate indifference of a conspiracy.

154 West was found guilty by def. Napoli inwhich he was sentenced to three years restriction on being grievance representative.

155. Ealier in hearing West asked Def. Napoli if he believed DOCS would lie of fabricate false charges in retaliation for filing grievances against inmates, which def. stated he did not believe C.O. or employee's were capable of filing false charges and were professionals.

156. def. napoli reaffirmed that he would not consider the charges were falsely filed and predetermined West's guilt by deliberate indifference by a racial animus.

157. West was deprived of fair time to prepare defense for impartial hearing before a neutral arbitrator by a reckless  or callous indifference.

158. Def. Napoli was far from unbiased by deliberate indifference.

159. def. napoli's position on fabrication or false charges created an issue of fact of whether refused to consider on the evid. or merits of West' principle defense to the charges by deliberate indifference.

160. Def. napoli indicates on hearing record without hearing the evid., whether West's factual defense inconceivable by deliberate indifference.

161. West wrote to def. Selsky Oct. 23, 2003 with constructive notice

of a conflict of interest in def. Napoli being hearing officer of West's impeachment hearing, as a interested party by a meeting of the minds. Ex. R6.

162. Def. Selsky wrote West back sending copy to def. Poole and declined to get involved by deliberate indifference.

163. Pursuant to Directive 4932, Part 254 (254.1) with enclosures I sent to def. Selsky was recklessly disgarded by deliberate indifference.

164. West filed his appeal to def. Goord in Nov.2003, which def. Selsky denied by affirmed by deliberate indifference or callous indifference.

165. Def. Selsky by deliberate indifference failed to properly examine West's appeal critically for corrective, or remedial action by inaction.

166. def. Selsky reversed numerous appeals on denial of witnesses, Inmate Assistance, Confidential Information raised without notice to Inmate, far from unbiased hearing office, starting hearing before assistance is completed reversed on appeal by himself. But, discriminated against West by a racial animus of deliberate indifference

167. The culmulative issues ten, reiterated herein as to West's appeal show a pattently gross violation of due process violation by def. Napoli by deliberate indifference by his stated acts herin.

168. Def. Napoli lied on the witness refusal form and never stated that callinh any of the DOCS eployee witnesses would jeopardize institutional security of penalogical goals which is a requirement by deliberate indifference by a reckless callousness of due process.

169. raised issue of denied documentary evidence as to inmate grievances alleged in appeal denied which no written refusal was provided to West.

170. West raised issue of report not sufficient on appeal.

171. Pursuant to Dir. 4932 hearing offier is to electronically record a interview with def. lauber and play it back for West which was not done by deliberate indifference to due process

172. Def. Selsky's ineffectiveness in failinq to properly supervise hearinq officers would take corrective or remedial action could lead a rational factfinder to conclude that def. knowingly condoned and ratified the illegal due process violations committed by def. Napoli would cause const. injuries.

173. A reasonable supervisor charged with the duties as def. Selsky bore, would have understood that he could be held const. liable by falinq to take corrective or remedial action on def. Napoli's conduct of West's hearinq by reckless or callous indifference of discriminatory acts aqainst West.

174. def. Selsky displayed a reckless and callous indifference in properly supervising def. Napoli as a hearing officer who committed cumulative violations in West's hearinq by deliberate indifference.

175. def. Selsky created a unstated policy of toleration of the arbitrary violations of due process aqainst the disabled by deliberate indifference by his inaction intentionally.

176. def Selsky with intent failed to remedy the violation of Dir. 4932, Part 254, §254.1 after beinq informed by a racial animus towards West's due process rights by deliberate indifference.

177. def. Selsky directly participated in the violations by a cover-up of def. Napoli's conduct in affòrming West's appeal by a reckless, callous, indifference by a gross disregard of deliberate indifference.

178. Def. Goord intentionally failed to properly train & supervise def.'s Bernardi, Leclaire, Poole, Eagen, Dennis, Henrich, Case, Pabon, Zehr, keefe, Lauber, Napoli, and Selsky by reckles or callous of deliberate indifference.

179. West reiterates para. #42 to 178 to end. Of the actins, conduct of all def.'s, including him were deliberately indifferent to West's rights in this complaint as more fully state.

180. Personal involvement of def. Goord is established by following:

   a. Failed to remedy violations retaliation of 1st amend rights after being informed thru grievances he's named in, and letter, contact by other state agencies, etc. by deliberate indifference..

   b. Created a intentionally discriminated act or policy or unstated one of retaliatory toleration of discriminate acts against the disabled by the deliberate indifference by a racial animus towards West.

c. Created a unstated policy of job discrimination in violation of Title VII against disable West allowed to white & latin IGRC workers by deliberate indifference.

d. displayed a reckless or callous indifference in supervising adherence subordinates of valid court orders during limitations and continuing violation doctrine against West by a racial animus or deliberate indifference.

e. Created a policy or custon which condoned or consented to intimidation of 1st amend. rights by deliberate indifference.

f. displayed a reckless or callous indifference in properly supervising def.'s named in complaint who committed the violations.

g. reckless, callous, and indifference to ensuring West's wheelchair with special projectors maintained in good repair with handsplints, patient confidentiality, proper informed consent, assigned pusher, and prohibited use of black box on or used pursuant to valid court.

h. condoned or consented to retaliatory grievance program in illegally undermining vaild court orders by decisions of grievance program which did usurp rights West won in court.

i. condoned and consent to discriminatory acts or policy in violation of the Second Circuit's SUMMARY ORDER OF COLLATERAL ESTOPPEL OR RES JUDICATA December 2003 to punish West for being a successful litigant by deliberate indifference.

j. knowledge of a pattern or practice of unconstitutional violations by subordinates of 1st amend. rights of free speech, protected conduct, filing a grievance without retaliation or reprisals.

k. knowledge of a pattern or practice of unconstitutional violations against ADA & Rehab. Act and Title VII Job Discrimination by intentional failure to take corrective, remedial or disciplinary action by inaction.

l. condoning or consenting to discriminatory new rules against the disabled in work place in violation of N.Y. Administrative Procedure Act of Agency rules by reckless or callous indifference, in the work place.

m. Discriminatory act of preferential treatment of or non-disabled persons in IGRC office at Five Points over disabled or handicapped by racial animus of deliberate indifference.

n. violation of ADA & Rehab. Act and Title VII in denial of wheelchair accessible desk for disabled or handicapped by discriminatort acts by a racial animus and deliberate indifference.

o. ineffectiveness of non-disciline of West's allegations could lead a rational factfinder to conclude that def. Goord knowingly condoned and ratified actions of all def.'s named herein by deliberate indifference.

p. def. a supervisory official personally after notice condoned unconstitutional discriminatory acts or unstated policy against disabled by named def.'s complained in this action he was responsible for supervising intentionally failed to correct the situation.

q. a reasonable supervisor as def. charged with his duties bore, would have understood that he could be held constitutional liable for failing to identify and take remedial action by inaction against the named def.'s.

r. It is inferred from the circumstances of this action of discriminate acts or policy, unstated policy to properly train and supervise or discipline by def. was intentional by deliberate indifference.

s. failure to punish those responsible confirmed the existence of a unstated policy of toleration of ridiculing disabled as a cripple and intimidation of the exercise of 1st amend. rights by deliberate indifference.

t. The inferences of the early stages of West's grievances and the later stages portray def. bore some responsibility for the alleged retaliatory acts discriminatory act or policies, job discrimination, an ADA & Rehab. Acts violations.

## CLAIMS FOR RELIEF

181. Def.'s have failed to make DOCS IGRCProgram accessible to West and the fair opportunity to participate in the program , it activities, and the benefits of job they offer to non-disabled individuals in custody & control.

182. Def.'s acts, omissions, and course of conduct, set forth in FACTUAL ALLEGATIONS section above, were intenional.violate § 504 of the Rehabilitat-

FORM 2176 (07/02)

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES

## WITNESS INTERVIEW NOTICE (For Superintendent's & Disciplinary Hearings)

_____Five Points_____ Correctional Facility

_Wes_
**Inmate Name (Print)**        _89A6906_
                              DIN#

An inmate may call witnesses on his or her behalf provided their testimony is material, is not redundant, and doing so does not jeopardize institutional safety or correctional goals.

If permission to call a witness is denied, or if a requested witness testifies outside the presence of the inmate charged and/or if the inmate is not permitted to review the testimony of a witness, the reason for such determination must be recorded on this form and copies given to the inmate by the hearing officer and included in the hearing record.

Reference: Directive #4932, Sections 253.5 and 254.5.

_Comm. Grord._
**Requested witness:**
☒ Permission to call the requested witness is denied.
☐ Requested witness will testify outside inmate's presence.
☐ Inmate is not permitted to review requested witness's testimony.

Date: _11-4-03_  Explanation: _No Knowledge of hearing, or_
_Issues_

************************************************************************************

_Mr. Bernardi_
**Requested witness:**
☒ Permission to call the requested witness is denied.
☐ Requested witness will testify outside inmate's presence.
☐ Inmate is not permitted to review requested witness's testimony.

Date: _11-4-03_  Explanation: _No Knowledge of hearing, no issues_

************************************************************************************

_Mr. Egan_
**Requested witness:**
☒ Permission to call the requested witness is denied.
☐ Requested witness will testify outside inmate's presence.
☐ Inmate is not permitted to review requested witness's testimony.

Date: _11-4-03_  Explanation: _No Knowledge of hearing, or_
_Issues_

**Signature** _Napa_     X _____     _____     _11-12-03_
        Hearing Officer          Inmate          DIN          Date Received

Distribution: Original - Hearing Record   Copy - Inmate

EX. Z1

FORM 2176 (07/02)

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES

## WITNESS INTERVIEW NOTICE (For Superintendent's & Disciplinary Hearings)

_Five Points_ Correctional Facility

_Allen_
**Inmate Name** (Print)

_89A6906_
DIN#

An inmate may call witnesses on his or her behalf provided their testimony is material, is not redundant, and doing so does not jeopardize institutional safety or correctional goals.

If permission to call a witness is denied, or if a requested witness testifies outside the presence of the inmate charged and/or if the inmate is not permitted to review the testimony of a witness, the reason for such determination must be recorded on this form and copies given to the inmate by the hearing officer and included in the hearing record.

Reference: Directive #4932, Sections 253.5 and 254.5.

_Mr. Pruncki_
**Requested witness:**

☑ Permission to call the requested witness is denied.
☐ Requested witness will testify outside inmate's presence.
☐ Inmate is not permitted to review requested witness's testimony.

Date: _11-4-05_ Explanation: _No knowledge of hearing or witness_

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

_J Donald_
**Requested witness:**

☑ Permission to call the requested witness is denied.
☐ Requested witness will testify outside inmate's presence.
☐ Inmate is not permitted to review requested witness's testimony.

Date: _11 4 05_ Explanation: _No knowledge of hearing or witness._

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**Requested witness:**

☐ Permission to call the requested witness is denied.
☐ Requested witness will testify outside inmate's presence.
☐ Inmate is not permitted to review requested witness's testimony.

Date: _____ Explanation: _____

**Signature** _Vayu_
Hearing Officer

_Oneika_
Inmate

_89A6906_
DIN

_11-14-05_
Date Received

Distribution: Original - Hearing Record   Copy - Inmate

Z2

FORM 2176 (07/02)

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES

## WITNESS INTERVIEW NOTICE (For Superintendent's & Disciplinary Hearings)

_Five Point_ Correctional Facility

_Wells_
**Inmate Name (Print)**

_89A6906_
DIN#

An inmate may call witnesses on his or her behalf provided their testimony is material, is not redundant, and doing so does not jeopardize institutional safety or correctional goals.

If permission to call a witness is denied, or if a requested witness testifies outside the presence of the inmate charged and/or if the inmate is not permitted to review the testimony of a witness, the reason for such determination must be recorded on this form and copies given to the inmate by the hearing officer and included in the hearing record.

Reference: Directive #4932, Sections 253.5 and 254.5.

_Mr. J. Patterson_
**Requested witness:**

☒ Permission to call the requested witness is denied.
☐ Requested witness will testify outside inmate's presence.
☐ Inmate is not permitted to review requested witness's testimony.

Date: _11-14-03_   Explanation: _No knowledge of happing de_
_ssues._

---

**Requested witness:** _____

☐ Permission to call the requested witness is denied.
☐ Requested witness will testify outside inmate's presence.
☐ Inmate is not permitted to review requested witness's testimony.

Date: _____  Explanation: _____

---

**Requested witness:** _____

☐ Permission to call the requested witness is denied.
☐ Requested witness will testify outside inmate's presence.
☐ Inmate is not permitted to review requested witness's testimony.

Date: _____  Explanation: _____

**Signature** _Vann_          _James W_        _89A6906_    _11-14-05_
          Hearing Officer              Inmate            DIN        Date Received

Distribution: Original - Hearing Record   Copy - Inmate

EX.3

FORM 2176 (07/02)

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES

## WITNESS INTERVIEW NOTICE (For Superintendent's & Disciplinary Hearings)

_Five Points_ Correctional Facility

_Wen_
**Inmate Name (Print)**

_89A6906_
DIN#

An inmate may call witnesses on his or her behalf provided their testimony is material, is not redundant, and doing so does not jeopardize institutional safety or correctional goals.

If permission to call a witness is denied, or if a requested witness testifies outside the presence of the inmate charged and/or if the inmate is not permitted to review the testimony of a witness, the reason for such determination must be recorded on this form and copies given to the inmate by the hearing officer and included in the hearing record.

Reference: Directive #4932, Sections 253.5 and 254.5.

_Sup T. Poole_
**Requested witness:**

☒ Permission to call the requested witness is denied.
☐ Requested witness will testify outside inmate's presence.
☐ Inmate is not permitted to review requested witness's testimony.

Date: _11-4-03_ Explanation: _No direct knowledge of ICLC_
_activities of inmate, and circumstances of_
_impeachment._

*******************************************************************************************

_QW D. Napoli_
**Requested witness:**

☒ Permission to call the requested witness is denied.
☐ Requested witness will testify outside inmate's presence.
☐ Inmate is not permitted to review requested witness's testimony.

Date: _11-5-03_ Explanation: _No direct knowledge of your_
_ICLC activities, hearing officer_

*******************************************************************************************

_No W. Sanner_
**Requested witness:**

☒ Permission to call the requested witness is denied.
☐ Requested witness will testify outside inmate's presence.
☐ Inmate is not permitted to review requested witness's testimony.

Date: _11-4-03_ Explanation: _No direct knowledge of your_
_ICLC activities, or hearing on impeachment._

**Signature** _Daniel Napa_        _Wen_   _89A6906_   _11-11-03_
Hearing Officer            Inmate          DIN         Date Received

Distribution: Original - Hearing Record   Copy - Inmate   Z4

Mr. James Wess # 89-A-6906
Five Points Correctional Facility
State Route 96, P.O. Box 119
Romulus, New York 14541


October 23rd, 2003


Mr. Donald Selsky, Director
Special Housing & Hearings
N.Y.S. DEPT. OF CORRECTIONAL SERVICES
1220 Washington Avenue
Albany, New York 12226

RE: VIOLATION OF DIRECTIVE 4932, Ch. V, STANDARDS BEHAVIOR & ALLOWANCES,
ET CETERA.

Dear Mr. Selsky:

I am writing to your attention in reference to above-captioned
matter.

The purpose of this correspondence is to provide you with "ACTUAL
AND CONSTRUCTIVE NOTICE" of the above and herein.

I wrote to the Commission of Investigation about a corrupt, illegal
and fraudulent IGRC Program at Five Points. Mr. Stephen Weiner, Chairman,
Ms. Jill K. Levine and Mr. Richard Roy, to investigate.

Pursuant to Dir. 4932, Part 254 Supt. Hearing (Hearing Officer),
in your review of the ENCLOSURES ( LETTER FROM COMMISSION OF INVESTIGAT-
ION), Deputy Supt. Security Napoli, should not being sitting as Hearing
Officer, based upon, § 254.1. Because he is a person directly involved
in the incident of a Corrupt IGRC PROGRAM at the prison.

I believe that this is a conflict of interest as an interested par-
ty to actions and conduct complained of. It is my belief that this is a
matter that the Supt and staff is trying to keep in-house to cover-up
the matter and set me up for an illegal impeachment proceedings by the
concerted effort of DOCS employee's. I believe that the Hearing should
have come from the DOCS Central Office?

Thank you for your time and attention in this respective matter, in-
which I look forward to hearing from you at your earliest convenience. I
have put my mail in the U.S. Mailbox to be sent, prisoner mailbox rule.


JW/jw
cc:    Judge Robert J. Ward
       Alexander A. Reinert, Esq.
       Jack Beck, Esq.
       Commission of Investigation
       State Commission of Correction
       file

Very truly yours,

*ames West*

JAMES WESS


EX. R6

STATE OF NEW YORK
DEPARTMENT OF CORRECTIONAL SERVICES
THE HARRIMAN STATE CAMPUS
1220 WASHINGTON AVENUE
ALBANY, N.Y. 12226-2050

GLENN S. GOORD
COMMISSIONER

LUCIEN J. LECLAIRE, JR.
DEPUTY COMMISSIONER
CORRECTIONAL FACILITIES

November 19, 2003

Mr. James Wess
#89A6906
Five Points Correctional Facility
State Route 96, P.O. Box 119
Romulus, NY 14541

Dear Mr. Wess:

This is in response to your letter of October 23, 2003, concerning a pending IGRC impeachment hearing.

This office will not intervene in the hearing officer selection process. Upon completion of the hearing, if you are dissatisfied with the outcome, you may appeal the results in accordance with established procedures.

Sincerely,

Donald Selsky
Director, Special Housing/
Inmate Disciplinary Programs

DS/pcn
cc: Superintendent Poole, Five Points Correctional Facility

EX. R7

# Central New York Psychiatric Center

**New York State Office of Mental Health**

H. E. Smith, Executive Director
A. Menon, MD, Clinical Director

Providing quality Forensic Services for 20 years
1977 - 1997



Satellite Unit
at Auburn Correctional Facility
135 State Street
Auburn, NY 13021
Phone (315) 253-8401 Ext. 1212
Fax (315) 253-8401 Ext. 1299

Mr. James West 89-A-6906
Unit for the Physically Disabled
Route 216-Drawer B
Stormville, New York 12582-0015

November 9, 1998

Dear Mr. West:

With regard to the question of the release of your psychiatric records
I have investigated the matter fully and have found that, indeed, your records were released to the
Attorney General. Moreover, you are correct that this should not have happened.

When the Office of Mental Health (OMH) or any of its employees are defendants in any legal
matter, the Attorney General's Office provides representation and any records maintained by
OMH which are requested are appropriately forwarded to that Office to assist in the defense of
the matter. In your case, neither OMH nor any of its employees were defendants and accordingly,
no record would have been provided without your consent or an order of the court. The release
of your record was inadvertent.

I appreciate your frustration upon learning that the record had been released, and thank you for
your patience while the matter was being investigated.

As a result of the attention which you brought to this matter, we are in instituting a procedure
which seeks to insure that this will not happen in the future.

I am sorry that this happened.

Sincerely,

Jurgen Karker, Ph.D.
Associate Director of Operations
Central New York Psychiatric Center

ion Act, which West seeks TWENTY-FIVE THOUSAND DOLLARS from def.'s Bernardi, Leclaire, Eagen, J. Dennis, Henrich, Lauber, Case, Pabon, Poole, and Napoli individual or personal capacity, which Bernardi in official capacity.

a. West seeks punitive damages in the amount of THIRY THOUSAND DOLLARS for def.'s intentional act or omissions.

183. The acts, omissions and course of conduct of def.'s Bernardi, Eagen, Leclaire, Poole, Dennis, Henrich, Case, Pabon, Keefe, Lauber, and Napoli, set forth in the FACTUAL ALLEGATIONS section above, violate the AMERICANS WITH DISABILITIES ACT, 42 U.S.C. §12101 ET SEQ.

a. West seeks TWENTY-FIVE THOUSAND DOLLARS in compensatory damages in their individual/personal capacity, Bernardi in his official capacity.

b. West seeks THIRY THOUSAND DOLLARS in punitive damages from defendants.

184. The acts, omissions and course of conduct of defendants, set forth in FACTUAL ALLEGATIONS section above, violate Title VII (Job Discrimination), perpetrated under color od state law, seeks TWENTY THOUSAND DOLLARS in compensatory damages from def.'s Eagen. Dennis, Poole, Henrich, Case, Pabon, keefe, and Lauber.

a. West seeks punitive damages in the amount of THIRTY THOUSAND DOLLARS by named def.'s.

185. The acts, omissions an course of conduct of def.'s, set forth in the FACTUAL ALLEGATIONS section above, perpetrated under color of state law in violation of West's federally protected rights, also violate 42. U.S.C.§1983 1st Amend. of Free Speech, Right to Seek Redress & and Protected Conduct in seeking THIRTY-FIVE THOUSAND DOLLARS incompensatory damages from the def.'s Goord, Bernardi, Leclaire, Eagen, J. Dennis, Henrich, Case, Pabon, keefe, Poole, and Lauber.

a. West seeks THIRTY-FIVE THOUSAND DOLLARS in punitive damages from the def.'s named above.

186. The acts, omissions an course of conduct of defendants, set forth in FACTUAL ALLEGATIONS section above, perpetrated under color of state law in violation of West's federally protected rights, also violate 42 U.S.C.:1985(3 in seeking FIFTY-THOUSAND DOLLARS in compensatory damages from def.'s Goord, Bernardi, Leclaire, Eagen, Poole, J. Dennis, Henrich, Case, Pabon, Keefe, Lauber, and Napoli.

a. West seeks FIFTY-THOUSAND DOLLARS in punitives from def.'s.

187. The acts, omissions an course of conduct of def.'s Eagen, Dennis, Poole, Henrich, Case, Pabon, Keefe, Lauber, Bernardi, Leclaire and Goord, set forth in the FACTUAL ALLEGATIONS section above, perpetrated under color of state law in violation of West's federally protected, also violate EQUAL PROTECTION under the 14th Amend. to U.S. Const., seeks compensatory damages in

188. The acts, omissions an course of conduct of def.'s Goord failing to properly tarin and supervise subordinates , set forth in FACTUAL ALLEGATIONS SECTION ABOVE, perpetrated unded color of state law, also violate 42 U.S.C.: 1983 in West's seeking compensatory damages of SIXTY-THOUSAND DOLLARS.

a. West seeks SIXTY-THOUSAND DOLLARS in punitive damages from all def.'s.

189. Acts, omissions an course of conduct of def.'s Bernardi, Leclaire, Eagen, Poole, Dennis, Henrich Case, Lauber, set forth in FACTUAL ALLEGATIONS scetion above, violate 42 U.S.C. §1983 of violating valid court orders & decisions undermined by illegal grievance procedures including CORC. West seeks SEVENTY-THOUSAND DOLLARS compensatory damages.

190. West seeks SEVENTY-FIVE THOUSAND DOLLARS in punitive damages from def.'s.

WHEREFORE, plaintiff pray that this Court grant the following:

A. Injunctive relief against def.'s.

B. Award of reasonable attorney fees.

RESPECTFULLY

SWORN TO BEFORE ME THIS 15th DAY

ARTHUR BRODOCK,JR
NOTARY PUBLIC, State of New York
No. 01BR6110823
Appointed in Oneida County
Commission Expires 01 June 2008

JAMES M. WESS

OF NOVEMBER , 20 07.

NOTARY PUBLIC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
JAMES WEST,

                    Plaintiff,

        -- against --

THOMAS COUGHLIN, III, Commissioner
of the New York State Department
of Correctional Services; et al.,

                    Defendants.

----------------------------------X

**MEMORANDUM AND ORDER
AND REPORT AND RECOMMENDATION**
93 Civ. 8948 (LAK)(NRB)

**TO THE HONORABLE LEWIS A. KAPLAN:**

Plaintiff, an inmate at the Green Haven Correctional Facility, filed this complaint on December 28, 1993 under the Civil Rights Act, 42 U.S.C. § 1983, section 504 of the Rehabilitation Act of 1973, 49 U.S.C. § 794, and a common law negligence theory. He also sued to enforce a consent order entered in M_lburn v. Coughlin, 79 Civ. 5077. By Order dated December 18, 1995, you adopted our Report and Recommendation, which recommended: (1) dismissal of all claims seeking damages against defendants in their official capacities; (2) dismissal of the due process claims against all defendants; (3) severance of the claim alleging violation of the consent decree; and (4) that plaintiff be granted time to replead his claims based on the Eighth Amendment, the Rehabilitation Act, and common law negligence. Plaintiff submitted an amended complaint on January 26, 1996, reasserting section 1983 and state law claims, and asserting new section 1983 claims based on the equal protection clause, but apparently dropping those claims brought under the Rehabilitation Act. Additionally, our search

Ex.A

diversity jurisdiction to maintain his state law claims.[1] However, as our discussion below makes clear,[2] his attempt to rely on diversity jurisdiction as a basis for the state law claims is futile. See Nerney v. Valente & Sons Repair Shop, 66 F.3d 25, 28 (2d Cir. 1995). As a result, we deny his request to replead. Similarly, as defendants' motion to dismiss focuses solely on the issue of whether this court may hear plaintiff's state law claims,[3] we deny his request for an extension of time to respond to the motion.

## B. Motion for Appointment of Counsel

Plaintiff also asks the court to appoint him counsel to assist in the prosecution of this civil rights action. In deciding whether to appoint counsel under 28 U.S.C. § 1915(d), a district court should consider: (1) the merits of a party's claims; (2) ability to pay; (3) the party's efforts to obtain a lawyer; (4) the availability of a lawyer; (5) the party's ability to gather and deal with the relevant facts; (6) the complexity of the legal issues involved; (7) the nature of the factual issues presented; and (8) the party's ability to present the case. Cooper v. A. Sargenti Co., 877 F.2d 170, 172 (2d Cir. 1989); Hodge v. Police Officers, 802 F.2d 58, 61-62 (2d Cir. 1986). The threshold

---

[1] Previously, plaintiff relied on supplemental jurisdiction as his jurisdictional basis.

[2] See Section II, n.4 infra.

[3] See Section II, infra.

(per curiam) (reversing district judge's refusal to appoint counsel
to paraplegic prisoner suing prison doctor who allegedly failed to
provide physical therapy, thereby worsening prisoner's condition).

## II.  DEFENDANTS' MOTION TO DISMISS

Defendants move to dismiss the entire complaint, but brief
only the issue relating to New York Correction Law § 24.  Given the
nature of the complaint and today's Order appointing counsel in
this case, we confine our discussion to the motion to dismiss
pursuant to section 24, which raises solely an issue of law that is
clearly controlled by a recent Second Circuit decision.

New York Correction Law § 24 states that civil actions brought
against department of corrections employees, such as defendants,
must be brought in the state court of claims.[4]  In our earlier
Report and Recommendation, we adopted the reasoning of Brown v.

---

[4] Section 24 provides in relevant part:

> 1. No civil action shall be brought in any
> court of the state, except by the attorney
> general on behalf of the state, against any
> officer or employee of the department, in his
> personal capacity, for damages arising out of
> any act done or the failure to perform any
> act within the scope of employment and in the
> discharge of the duties by such officer or
> employee.
> 2. Any claim for damages arising out of any
> act done or the failure to perform any act
> within the scope of the employment and in the
> discharge of the duties of any officer or
> employee of the department shall be brought
> and maintained in the court of claims as a
> claim against the state.

N.Y. Correct. Law § 24 (McKinney 1995).

## CONCLUSION

For the foregoing reasons, we deny plaintiff's requests for an extension of time to respond to defendants' motion to dismiss and to replead as a citizen of New Jersey, but grant his request for appointment of counsel. In addition, we recommend that defendants' motion seeking dismissal of plaintiff's state law claims against defendants in their personal capacities be granted, but that defendants' motion to dismiss plaintiff's complaint in its entirety be denied.

Copies of this Report and Recommendation have been mailed to all parties, who are hereby instructed that any objections to the Report and Recommendation must in accordance with Fed. R. Civ. P. 72 be filed with Your Honor within ten days from this date, unless an extension of time is granted by you. Failure to object to the report within ten days will preclude appellate review. 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 6(a), 6(e), and 72.

Respectfully submitted,

DATED:    New York, New York
          May 6, 1996

NAOMI REICE BUCHWALD

NAOMI REICE BUCHWALD
UNITED STATES MAGISTRATE JUDGE

9

LEWIS A. KAPLAN
DISTRICT JUDGE

July 28, 2000

Honorable Eliot Spitzer
Attorney General of the State of New York
120 Broadway
New York, New York 10271

*West v. Coughlin*   93 Civ. 8948 (LAK)

Dear General Spitzer:

The *pro se* plaintiff in this case is an inmate at the Upstate Correctional Facility in Malone, New York.

I recently have received letters from the plaintiff and another inmate (copies of which are enclosed) which, if true, raise serious questions about whether the inmate's medical needs are being served at even a minimal level consistent with civilized behavior. Investigation by your office at an appropriately high level might be the swiftest means of determining exactly what is going on and, if necessary, correcting any abuses that may exist.

Thank you for your attention to this matter.

Very truly yours,

cc:    Honorable Robert J. Ward
       ✓ James West #89A6906
       Ralph Eric Pittman #89A1834
       Rebecca Durden, Esq.
       Richard A. Nessler, Esq.

Ex. B

IT IS FURTHER ORDERED that James West be transferred from the Upstate Correctional Facility to the Green Haven Correctional Facility within 10 days of the date of this Order; and

IT IS FURTHER ORDERED that James West be provided with the Everest and Jennings wheelchair including, special rings and projectors, which James West has use of at Green Haven Correctional Facility or, in the alternative, if the wheelchair can not be located, to replace that wheelchair with the identical Everest and Jennings model including the replacement of special rings and projectors; and

IT IS FURTHER ORDERED that James West he provided with his hand splints which James West had use of at Green Haven Correctional Facility or, in the alternative, that identical hand splits be replaced if they can not be found; and

IT IS FURTHER ORDERED that all of James West's personal property, including his medical records and legal papers, be transferred from the Upstate Correctional Facility to the Green Haven Correctional Facility at the time James West is transferred; and

IT IS FURTHER ORDERED that the use of a black box in transporting James West from this day until the next date of his appearance in Court to be in violation of the Milburn Modified Judgment; and

For
cased
SDNY/NYNY
79-cv-507
Hon. Ward.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

## SUMMARY ORDER

THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL
REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS
OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS
OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A
RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL
OR RES JUDICATA.

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the
Thurgood Marshall United States Courthouse, Foley Square, in the City of New York, on the
/2ᵗʰ day of DEC     two thousand and three.

Present:
Hon. James L. Oakes,
Hon. Rosemary S. Pooler,
Hon. Richard C. Wesley,
    Circuit Judges.

UNITED STATES COURT OF APPEALS
FILED
DEC 12 2003
SECOND CIRCUIT

LOUIS MILBURN (James West),

    Plaintiff-Appellee-Cross-Appellant,

-v-                                                02-86(L); 02-96XAP

THOMAS A. COUGHLIN, III,

    Defendant-Appellant-Cross-Appellee.

Appearing for Plaintiff:     RICHARD A. NESSLER, White & Case, LLP, New York, N.Y.
Appearing for Defendant:     THOMAS B. LITSKY, Assistant Solicitor General, State of New
York Office of the Attorney General, New York, N.Y.

Defendant-Appellant-Cross-Appelee Thomas Coughlin, III ("Defendant") appeals
from the March 13, 2002 judgment of the United States District Court for the Southern District
of New York (Robert J. Ward, District Judge) holding Defendant in civil contempt for failing to
comply with the terms of the Milburn v. Coughlin Modified Final Judgment ("Milburn
Judgment") and awarded Plaintiff-Appellee-Cross-Appellant James West ("West") $100 in
nominal damages and West's attorneys, White & Case LLP, $5,000 for all out-of-pocket costs.
West appeals from the district court order refusing to award any compensatory damages.

ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED,
ADJUDGED, AND DECREED that the District Court's order be AFFIRMED in part, and
VACATED in part and REMANDED.

Ex D

of Defendant's breach. Accordingly, we hereby VACATE the district court order denying West's request for compensatory damages and REMAND this case to the district court so that it can determine an appropriate compensatory damages award.

FOR THE COURT:
ROSEANN B. MACKECHNIE, Clerk
By:

*Olivia Sn Brose*

DEC 1 2 2003

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LOUIS MILBURN, et al.

Plaintiffs,

-against-

THOMAS COUGHLIN, III, et al.,

Defendants.

**Conditional Discharge Order
for James West**

79 Civ. 5077 (RJW)

1. Mr. West shall be conditionally discharged to Five Points Correctional Facility ("Five Points") located in Seneca County, Town of Romulus, New York. Five Points shall house Mr. West in a handicapped accessible cell.

2. Dr. Koenigsmann shall prepare a new detailed discharge plan covering all of Mr. West's medical problems prior to Mr. West's transfer to Five Points, where Dr. Dobies shall serve as Mr. West's primary care provider. Dr. Koenigsmann shall promptly forward a copy of his discharge report to the Court, counsel for the parties, and Dr. Robert Cohen, Medical Auditor.

3. Dr. Dobies shall prepare a detailed plan of care for Mr. West covering all items in Dr. Koenigsmann's discharge plan, as well as any additional medical problems Dr. Dobies identifies. Dr. Dobies' plan shall be comprehensive, including all planned laboratory and radiological examinations, and the date by which each examination is expected to be completed.

4. In addition, Dr. Dobies shall promptly arrange for a trial of dynamic splinting for physical therapy treatment for Mr. West's bilateral Achilles' tendon contractures as recommended by the physiatry consultation dated January 16, 2002. If thereafter, dynamic splinting is unsuccessful in treating Mr. West's Achilles tendon contractures, Dr. Dobies will arrange for a physiatry evaluation for additional treatment options.

5. Dr. Dobies' report shall be prepared within two weeks of Mr. West's arrival at Five Points and forwarded to the Court,

1

Ex. C

14. Mr. West shall be provided with an assigned "pusher" to allow him to travel extended distances within the facility.

15. Mr. West shall be provided with recreation, library and law library privileges and religious service privileges on the same basis they are provided to other inmates within the same status as Mr. West. That is, as a general population inmate, Mr. West will be afforded the same recreation, law library and general library privileges as other general population inmates. If Mr. West's status changes to SHU or protective custody at Five Points, he will be afforded the same privileges as other inmates in the same status.

16. Mr. West's personal property, including all legal papers and his handicapped cassette player, shall accompany him to Five Points.

17. A diet appropriate to Mr. West's diabetes and hyperlipidemia shall be designed by a dietitian and provided to Mr. West.

18. Mr. West shall be provided with maximum confidentiality with regard to medical consultations consistent with proper security.

19. If Mr. West is unable to use the shower facility, sink or toilet currently in use for wheelchair-bound inmates at Five Points, a physiatrist shall determine the need for modification of the facilities.

20. Mr. West shall be provided with a wheelchair with appropriate cushions and hand splints; the wheelchair shall be maintained in good repair.

21. This Order shall not be construed as extending any of the provisions of the Consent Decree in _Milburn v. Coughlin_, 79 Civ. 5077 (RJW), to Five Points Correctional Facility, including, but not limited to, site visits by the Medical Auditor, except upon further order of the Court.

22. Mr. West shall cooperate fully with his health care providers without waiving his right to informed consent.



White & Case LLP
1155 Avenue of the Americas
New York, New York 10036-2787

Tel + 1 212 819 8200
Fax + 1 212 354 8113
www.whitecase.com

July 12, 2004

## VIA FACSIMILE & BY HAND

Honorable Richard C. Casey
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007



Re: Milburn v. Coughlin (James West) 79 Civ. 5077 (RCC)

Your Honor:

We write in response to the letter from the Attorney General's office dated July 2, 2004 attaching a Six Month Medical Report (the "Report") as required under the Conditional Discharge Order (the "Order") issued by the late Judge Robert J. Ward in the above referenced matter.

We have only had a brief opportunity to speak with Mr. West concerning the Report and his objections thereto. However, we are in receipt of a separate submission made by Mr. West to the Court regarding his objections to the Report (see attached). Further to this submission, Mr. West objects to the Report and respectfully requests that the Court extend the Order until counsel for the parties can confer and review Mr. West's objections to the Report.

Respectfully submitted,

Gregory M. Starner / hmo.

Gregory M. Starner

cc:    Susan H. Odessky
       Assistant Attorney General
       Office of the Attorney General
       State of New York
       120 Broadway, 24th Flr.
       New York, New York 10271

Application granted
Richard Conway Casey

7/16/04

**SO ORDERED**

IT IS ORDERED that counsel to whom this order is sent is responsible for faxing a copy to all counsel and retaining verification of such in the case file. Do not fax such verification to Chambers.

ALMATY   ANKARA   BANGKOK   BEIJING   BERLIN   BRATISLAVA   BRUSSELS   BUDAPEST   DRESDEN   DÜSSELDORF   FRANKFURT   HAMBURG   HELSINKI
HO CHI MINH CITY   HONG KONG   ISTANBUL   JOHANNESBURG   LONDON   LOS ANGELES   MEXICO CITY   MIAMI   MILAN   MOSCOW   MUMBAI   NEW YORK   PALO ALTO
PARIS   PRAGUE   RIYADH   ROME   SAN FRANCISCO   SÃO PAULO   SHANGHAI   SINGAPORE   STOCKHOLM   TOKYO   WARSAW   WASHINGTON, DC

NEWYORK 4159152 v1 (2K)

Ex. D

*Permit me to*
*Do my job*

(49)

Date      : July 2nd, 2003

To        : J. Henrich, I.G. Supervisor, Five Points Corr. Facility

From      : JAMES WESS #89-A-6906 / 9-B1-1B

Subject : <u>Violation Of Dir. 4040, II Definitions, G. Advisor, Etc</u>.


      This correspondence is in reference to the above matter as above-captioned.

      G. Advisor – a person who assists the grievant in filing, preparing or expressing the grievants's complaint. Staff members from the IGRC from the IGRC or the facility at large may serve as advisors. Staff must be willing to accept this function..

WEBSTER'S II – New Riverside Pocket Dictionary (Revised Edition)

STAFF: A GROUP OF ASSISTANTS OR EMPLOYEE'S

      TO PROVIDE WITH EMPLOYEE'S

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (UNABRIDGED)

STAFF: Of, Relating to, or constituting a staff – officers – personnel

      having a auxillary or advisory relationship to the stated object-ive of an organization.

Inmate Grievance Clerk

Subdivision 2. To assist inmates in the preparation of grievances, in-suring a clear statement of the problem. Formulate with the grievant an equaitable resolution as an action re-request, etc.

      In my meeting with you today, I was precluded from receiving the information as to a specific particularity upon reading what was the job description of the IGRC REPRESENTATIVES. And no decorum

      I have mad contention about the IGRC legally under the law, which I contend that they still exist to this day. I have not been provided with any documentation of the N.Y. State Senate, nor the New York State Assembly granting any waivers to the DOCS, Commissioner to not comply with Directive 4040 that follows Section 139 of the New York Corrections Law (State of New York.

      I would like a written response as why I as a IGRC REP. am not being allowed or cannot assist an inmate as an advisor in filing a grievance un-der Dir. 4040, Mrs. Henrich. Since you are my  Supervisor as the I.G. Sup-ervisor, I will put my what I have a problem with as to any non-compliance of Dir. 4040. I disagree in the subtle singling me out indirectly at thee meeting on July 2, 2003, with inaccurate information gaulty at best, when a law clerk speaks to me in the interest if Section 1997(e) and advisory capacity as to informing him on a matter which he was in the dark about.

FPT-8058-03

Ex. 88.

7/09/03

RECEIVED