UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

James M. West,
        Plaintiff,

                 **Hon. Hugh B. Scott**

                 05CV447A
       v.

                 Report
                 &
                 Recommendation

Glenn Goord, Commissioner of the New York
State Department of Correctional Services,  et al.,
          Respondent.
_____

  Before the Court is the defendants motion to strike and dismiss the Second Amended Complaint with prejudice. (Docket No. 30).

## Background

  This case has a somewhat tortured procedural history.  The plaintiff,  James M. West ("West"), commenced this action on June 21, 2005, against numerous defendants employed by the New York State Department of Correctional Services ("DOCS").  The original Complaint, was a 58-page type-written document filed by the plaintiff on behalf of himself and two other individuals, naming eight known defendants and nine "John Does" and included class action claims. In addition to West, Abdul M. Shariff ("Shariff") and Divine C. Allah ("Allah") were

named as plaintiffs but did not sign the complaint.  The specific nature of the plaintiff's claims was difficult to discern, although the Complaint appeared to involve the plaintiff's participation as an inmate representative to the Inmate Grievance Committee Office ("IRGC") and alleged corruption in the IRGC program.  On August 9, 2005, District Court Judge Richard J. Arcara dismissed the action as to plaintiffs Shariff and Allah. (Docket No. 5). On October 31, 2005, District Court Judge John T. Elfvin denied class certification and further dismissed the Complaint without prejudice on the grounds that it failed to meet the requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure. (Docket No. 6).   The plaintiff was granted leave to file an Amended Complaint within 30 days.  The plaintiff was advised of the various deficiencies in the original complaint. (Docket No. 6 at page 9).

The plaintiff filed an Amended Complaint on January 9, 2006.  (Docket No. 9).  District Court Judge William M. Skretny granted the plaintiff *in forma pauperis* status, dismissed Shariff and Allah as plaintiffs, reaffirmed the dismissal of the class allegations, and ordered that the Amended Complaint should be served upon the defendants. (Docket No. 11).   The defendants moved to dismiss the complaint and/or for a more definite statement, alleging that the Amended Complaint still failed to meet the requirements of Rules 8 and 10 (Docket No. 16). Although the Amended Complaint was limited to 15 pages (and approximately 189 paragraphs), West still failed to remedy the deficiencies previously noted in the Judge Elfvin's October 31, 2006 Order or otherwise meet the requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure.  The plaintiff continued to style the action as a purported class action.  Further, the Amended Complaint still failed  to set forth a concise and short statement of the plaintiff's claims in this case.  See Phillips v. Girdich, 408 F.3d. 124, 128 (2d. Cir. 2005).  This Court issued a Report &

Recommendation recommending that the Amended Complaint be dismissed and the plaintiff afforded a further opportunity to amend. (Docket No. 24). On September 26, 2007, Judge Arcara again dismissed the complaint, and again provided the plaintiff an opportunity to file a Second Amended Complaint which meets the requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure, and the District Court's prior Order dated October 31, 2005. (Docket No. 28).

On November 20, 2007, the plaintiff filed a Second Amended Complaint which was 190 paragraphs (not including sub-parts) over 22 pages (typed single-spaced), with some 82 pages of attachments. (Docket No. 29). The defendants again filed a motion to dismiss, the instant motion, arguing that the newest pleading did not comply with the Court's prior orders. (Docket No. 30). On December 6, 2007, the Court issued a briefing schedule with respect to the motion directing the plaintiff to respond by January 4, 2008. (Docket No. 32). On January 24, 2008, the plaintiff filed a motion seeking an extension of time to file a response. (Docket No. 34). West's motion for an extension of time was granted on that same date. The Court granted the plaintiff additional time, to February 22, 2008 to file a response. (Docket No. 35). The plaintiff again failed to respond to the motion to dismiss the Second Amended Complaint in any manner. Thus, the Court issued a Report & Recommendation that the case be dismissed based upon a failure to prosecute by the plaintiff. (Docket No. 36). Subsequent to the Report & Recommendation, the plaintiff filed a motion for an extension of time to file objections. (Docket No. 37). Judge Arcara granted the plaintiff an extension, to June 30, 2008, to file objections. (Docket No. 38). The plaintiff's objections were filed on July 3, 2008. (Docket No. 42). Judge Arcara dismissed the complaint based upon a failure to prosecute holding that the plaintiff's objections only addressed

3

the merits of his claims and failed to provide any acceptable justification for failing to file a response to the defendants' motion to dismiss. (Docket No. 44 at pages 1-2). The plaintiff appealed the dismissal of the Second Amended Complaint. (Docket No. 46). Upon appeal, the Second Circuit Court of Appeals noted that the plaintiff may have been confused as to the nature of the pending motion to dismiss due to the fact that the Orders setting the briefing schedule contained a notice pursuant to <u>Irby v. New York City Transit Authority</u>, 262 F.3d 412 (2d. cir. 2001) which applied to summary judgment motions, not motions to dismiss. In any event, the Court held that inasmuch as the plaintiff did respond to the motion to dismiss, "albeit belatedly", the Second Circuit held that the District Court erred in finding that the plaintiff had ceased to take steps to prosecute his claims. Thus, the Second Circuit vacated the dismissal and remanded the case to the District Court for further proceedings. The Second Circuit stated that, upon remand, the District Court "may want to consider defendant's motion to dismiss or strike the Second Amended Complaint on the merits, based on the parties' submissions." (Docket No. 48 at page 6).

      To ensure that the plaintiff had an ample opportunity to respond to the defendants' motion to dismiss the Second Amended Complaint, the Court issued a briefing schedule directing the plaintiff to respond to the motion by July 29, 2011. (Docket No. 50). On August 9, 2011, the plaintiff filed a motion for an extension of time to respond. (Docket No. 52). The motion was granted and the plaintiff given until September 30, 2011 to respond. (Docket No. 53). On October 3, 2011, the plaintiff again filed a motion for an extension of time to respond. (Docket No. 54). This request was also granted. The plaintiff was provided until November 30, 2011 to respond. (Docket No. 55). On December 1, 2011, the plaintiff once again filed a third

motion for an extension of time to respond to the motion to dismiss, specifically asking for an extension until December 12, 2011 to respond. (Docket No. 56).  The Court granted the extension to December 12, 2011. (Docket No. 57).  The plaintiff submitted a response on December 13, 2011.  (Docket No. 61).

**Motion to Dismiss and §1915 Review**

The defendants have filed a motion to dismiss the complaint alleging that the Second Amended Complaint (Docket No. 29) still fails to comply with Rules 8 and 10. (Docket No. 30).  In evaluating the complaint in the context of a motion to dismiss, this Court must accept as true all of the factual allegations and must draw all inferences in plaintiff's favor. *See* Larkin v. Savage, 318 F.3d 138, 139 (2d Cir.2003) (per curiam); *King v. Simpson,* 189 F.3d 284, 287 (2d Cir.1999). While "a court is obliged to construe [ *pro se* ] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004), even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure. Wynder v. McMahon*,* 360 F.3d 73 (2d Cir.2004). "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Erickson v. Pardus*,* 551 U.S. 89, 93, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (quoting Bell Atlantic Corp. v. Twombly*,* 550 U.S. 544, 555, 127 S.Ct. 1955, 1959, 167 L.Ed.2d 929 (2007) (internal quotation marks and citation omitted). A complaint is subject to dismissal unless its factual allegations, if credited, make the claim "plausible." *See* Ashcroft v. Iqbal*,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)). Generally, as this Court has done herein, a *pro se* plaintiff will be afforded an opportunity to

amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." Abbas v. Dixon, 480 F.3d 636, 639 (quoting Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 796 (2d Cir.1999) ( *per curiam* )).

In Shomo v. State of New York, 374 Fed. Appx. 180 (2nd Cir. 2010), the Second Circuit reversed the District Court for dismissing a *pro se* complaint because, in part, it was too long and contained a great deal of irrelevant detail. In Shomo, with respect to review under Rule 8, the Second Circuit held:

> [P]leadings "need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests," ... and a court has the power to dismiss a complaint that is "prolix" or has a "surfeit of detail." ... On the other hand, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." ... A complaint must plead "enough facts to state a claim to relief that is plausible on its face." ... "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." ... Notably, even after Twombly, where a litigant is proceeding *pro se,* courts remain "obligated" to construe *pro se* complaints liberally. ... Thus, while *pro se* complaints must contain sufficient factual allegations to meet the plausibility standard, courts should look for such allegations by reading *pro se* complaints with "special solicitude" and interpreting them to raise the "strongest [claims] that they *suggest.*" ... Insofar as [the plaintiff] cited multiple civil rights statutes, "[t]he failure in a complaint to state a statute, or to cite the correct one, in no way affects the merits of a claim. Factual allegations alone are what matters." ... [I]t "is not unusual [for] a *pro se* litigant" to present "allegations [that are] not neatly parsed and include[ ] a great deal of irrelevant detail."

Shomo v. State of New York,  374 Fed. Appx. 180, 182-183, 2010 WL 1628771, 1 (2nd Cir. 2010 (internal citations omitted).

**Second Amended Complaint**

The Court reviews the allegations of the Second Amended Complaint in light of the standards discussed above.  The Second Amended Complaint contains 190 numbered paragraphs, with an additional 114 subparts, totaling 304 paragraphs. The initial paragraph of the Second Amended Complaint states that the plaintiff is seeking redress under 42 U.S.C. §§ 1983, 1985(3), 1986, the Americans with Disabilities Act ("ADA")(42 U.S.C. §12102), § 504 of the Rehabilitation Act (29 U.S.C. §794) and Title VII (42 U.S.C. §2000e). (Docket No.  29 at ¶1). The plaintiff asserts that he is a paraplegic confined to a wheelchair. (Second Amended Complaint at ¶ 21).  In paragraphs 2 through 13, the plaintiff refers to prior litigation going back to 1989 with the "NYC Corrections" for inadequate medical care. (Second Amended Complaint at ¶ 2). West states that the NYC Corrections did not send all of his medical records to the New York State Department of Correctional Services ("DOCS") and that DOCS "was duped into accepting West by fraud." (Second Amended Complaint at ¶ 3).  The plaintiff also refers to prior litigation in the Southern District of New York from 1996 to 2004.  (Second Amended Complaint at ¶¶ 5-13).  West asserts, generally, that this action seeks to redress claims for retaliation, job discrimination, and violations of the ADA and the Rehabilitation Act. (Second Amended Complaint at ¶¶ 14-17). [1]  In paragraphs 21 through 41, the plaintiff identifies the parties. Named as defendants in this complaint are: DOCS Commissioner Glenn S. Goord

---

[1] Paragraphs 18-20 of the Second Amended Complaint assert jurisdiction.

("Goord"), Deputy Commissioner Stephan Bernardi ("Bernardi"), Deputy Commissioner Lucien Leclaire ("Leclaire") Director of Inmate Grievance Program Thomas Eagen ("Eagen"), Superintendent of Five Points Correctional Facility Thomas Poole ("Poole"), "J. Dennis (J. Doe),"[2] Inmate Grievance Program Supervisor Janice Henrich ("Henrich"), Sgt. Case ("Case"), Sgt. Pabon ("Pabon"), Sgt. O'Keefe ("O'Keefe")[3], Corrections Officer Lisa Lauber ("Lauber"), Deputy Superintendent of Security David Napoli ("Napoli"), and Director of Disciplinary Hearings Donald Selsky ("Selsky"). (Second Amended Complaint at ¶¶ 22-34). With the exception of Bernardi, all defendants are sued in their individual capacity only. Bernardi is sued in his individual and official capacity. (Second Amended Complaint at ¶23) Although not listed in the caption, DOCS is also identified under the "parties" heading. (Second Amended Complaint 35).

The next 141 paragraphs (248 with subparts), under the heading "Factual Allegations," are not separated by sub-headings or otherwise attributed to any of the various claims referred to by West in ¶1 of the Second Amended Complaint. The Second Amended Complaint still includes allegations referring to Shariff[4], several allegations contain extraneous information[5], and the vast majority of paragraphs end by suggesting that the conduct described therein was "by

---

[2] This defendant is referred to herein as ("J. Dennis").

[3] Sgt. O'Keefe was listed as "Sgt. Keefe" in the caption. It appears that O'Keefe is the correct spelling (Docket No. 31).

[4] For example, see Second Amended Complaint at ¶ 57.

[5] For example, ¶58(g) states that "Def. Poole was always untimely by deliberate indifference. He spent more time on the golf course than doing his job by deliberate indifference from information and belief."

...

deliberate indifference" and/or "racial animus." Notwithstanding, the plaintiff asserts that when he arrived at Five Points Correctional Facility ("Five Points") in 2002, he was denied an adequate supply of catheter's for self-catherization in violation of an order obtained in prior litigation. (Second Amended Complaint at ¶45). The majority of West's allegations concern his role with the Inmate Grievance Resolution Committee ("IGRC"). The plaintiff states that he ran for election to the committee but was cheated out of votes "by racial preferences of" unidentified "IGRC rep's." (Second Amended Complaint at ¶ 46). West apparently ran and won election to the IGRC in 2003. West asserts that white and Latin members of the IGRC were allowed to have access and move about the facility to conduct IGRC business, but that Poole, Eagan, J. Dennis, Bernardi, Leclaire, and Henrich conspired to discriminate against him by denying West that privilege based upon his race and disability. (Second Amended Complaint at ¶¶ 48-57). The plaintiff claims that he spoke to Henrich, Case, Lauber, Pabon, and O'Keefe[6] regarding the access issue, but was still denied based upon "deliberate indifference" (Second Amended Complaint at ¶ 63) and "racial animus (Second Amended Complaint at 64). West further claims that he was harassed and retaliated against due to the fact that he complained that the IGRC was following various improper grievance procedures. (Second Amended Complaint at ¶¶ 58-77, 83-85). The plaintiff asserts that his request for a wheelchair accessible desk to facilitate his IGRC work was denied and that denial was deliberate indifference to his disability. (Second Amended Complaint at ¶¶61-62). The plaintiff asserts that Goord and Eagan are responsible on a supervisory basis because they knew Henrich, Lauber, Case, Zehr, Pabon and O'Keefe had poor

---

[6] In ¶ 65, the plaintiff also referred to "def. Zehr," although this individual is not named in the caption, or identified in the "parties" section of the Second Amended Complaint.

impulse control with psychological issues. (Second Amended Complaint at ¶82). West claims that Henrich, Lauber, Case, Zehr, Pabon and O'Keefe created a hostile working environment to "chill" his First Amendment rights. (Second Amended Complaint at ¶ 86). The plaintiff alleges that he told J. Dennis about the retaliation against him by Henrich, Poole, Case, Pabon, Zehr, O'Keefe, Lauber, Goord, Bernardi, Eagen and Leclaire and that she failed to take corrective action.  Further, West states that J. Dennis saw that his wheelchair was not maintained in good repair and that he had been denied hand splints, patient confidentiality, an assigned pusher, handicapped headphones to handicapped cassette player in retaliation for his complaints. (Second Amended Complaint at ¶¶ 90-105).  With respect to Eagen, as director of the DOCS grievance program, the plaintiff claims that Eagen had knowledge of the various complaints he had made and the retaliation taken against him by the other defendants. West asserts that Eagen conspired with the other defendants to discriminate against him and that Eagen was aware of a pattern and practice of violations of West's rights under the Constitution, the ADA, §504, and Title VII but failed to act.  (Second Amended Complaint at ¶¶ 106-121).  Similarly, the plaintiff claims that Poole conspired with the other defendants to deny him access to move about the facility like white and Latin members of the IGRC and to retaliate against him for his exercise of his First Amendment rights. West also claims that Poole failed to investigate or remedy the violations of his rights. (Second Amended Complaint at ¶¶ 122-133).  The plaintiff asserts that Bernard and Leclaire, as Deputy Commissioners of DOCS, failed to properly supervise the other defendants, and personally participated in the violations by, among other things, condoning and consenting to the denial of a wheelchair accessible desk, the maintenance of his wheelchair and the denial of hand splints and other accommodations. (Second Amended Complaint at ¶¶ 134-136(1)-(23)).

The plaintiff also alleges that Eagen, Henrich, Poole, J. Dennis, Napoli, Case, Lauber "had a meeting of the minds" to retaliate against him by filing false "impeachment charges" to have him removed (presumably from the IGRC) and that he was found guilty after a hearing at which he was denied his due process rights. (Second Amended Complaint at ¶¶ 137-161).  West claims that he wrote to Selsky to complain of the various issues relating to the "impeachment hearing", but that Seleky failed to take corrective or remedial action. Further, West asserts that Selsky created an unstated policy tolerating arbitrary violations of due process against the disabled. (Second Amended Complaint at ¶¶ 162-180(a)-(t)).

  Based upon these combined allegations, West asserts that Bernardi, Leclaire, Eagen, J. Dennis, Henrich, Lauber, Case, Pabon, Poole and Napoli in their individual capacity and Bernardi in his official capacity, failed to make the IGRC program accessible to the disabled in violation of §504 (Second Amended Complaint at ¶ 182); that Bernardi, Eagen, Leclaire, Poole, J. Dennis, Henrich, Case, Pabon, O'Keefe, Lauber, and Napoli (with Bernardi acting in his official capacity) violated this rights under the ADA (Second Amended Complaint at ¶183); that Keagen, J. Dennis, Poole, Henrich, Case, Pabon, O'Keefe and Lauber violated his rights under Title VII (Second Amended Complaint at ¶ 184); that Goord, Bernardi, Leclaire, Eagen, J. Dennis, Henrich, Case, Pabon, O'Keefe, Poole and Lauber violated his First Amendment rights under §1983 (Second Amended Complaint at ¶ 185); that Goord, Bernardi, Leclaire, Eagen, J. Dennis, Henrich, Case, Pabon, O'Keefe, Poole, Lauber and Napoli violated his unspecified rights under §1983 (Second Amended Complaint at ¶ 186); that Goord, Bernardi, Leclaire, Eagen, J. Dennis, Henrich, Case, Pabon, O'Keefe, Poole and Lauber violated his equal protection rights under §1983 (Second Amended Complaint at ¶ 187); that Goord violated the plaintiff's

11

rights under §1983 by failing to properly train the other defendants (Second Amended Complaint at ¶188); and that Bernardi, Leclaire, Eagen, J. Dennis, Henrich, Case, Poole and Lauber violated his rights by failing to comply with "valid court orders." (Second Amended Complaint at ¶ 189).  In addition to various monetary sums, the plaintiff seeks unspecified injuctive relief and attorneys fees. (Second Amended Complaint at ¶ 190).

Although unnecessarily long and repetitive, in light of the need to accept the allegations as true, and to construe them liberally, and particularly in light of the Second Circuit's holding in Shomo, the Court cannot conclude that the Second Amended Complaint "is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." The plaintiff has asserted that the defendants retaliated against him by failing to properly maintain his wheelchair and denying him various other accommodations in response to the filing of grievances and otherwise exercising his First Amendment rights.   Thus, this is sufficient to state a claim under §1983.[7]

The plaintiff also asserts that the defendants conspired to deprive him the right to serve as a representative on the IGRC because of his race and disability, and that the defendants failed to prevent that deprivation. Courts have recognized that an inmate has the right to be protected from retaliation for activities such as acting as an IGRC representative, based on the well-recognized protections afforded to those petitioning for the redress of grievances. *See* Garrett v. Reynolds,

---

[7] In order to maintain a § 1983 action, a plaintiff must allege two essential elements: (1) the conduct complained of must have been committed by a person acting under color of state law; (2) the conduct complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States. Section 1983 itself creates no substantive rights, but only a procedure for redress for the deprivation of rights established elsewhere. Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir.1994); *Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993).

2003 WL 22299359, *4 (N.D.N.Y. Oct. 7, 2003); McCorkle v. Juchenwicz, 1999 WL 163205, *1 (S.D.N.Y. Mar. 23, 1999); Lashley v. Wakefield, 367 F.Supp.2d 461, 466 (W.D.N.Y.,2005). Thus, taking these allegations to be true, the plaintiff has stated a claims under §1985(3) and §1986[8] for purposes of an initial review under 28 U.S.C. §1915(e)(2)(B).

Similarly, interpreted to raise the strongest claims they suggest, West has sufficiently stated claims under Title VII [9] and §504.[10] West claims that he engaged in protected activity (i.e the filing of grievances, and work on the IGRC), that the defendants were aware of the activity,

---

[8] In order to state a conspiracy claim under 42 U.S.C. § 1985(3), a plaintiff must show: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. Britt v. Garcia, 457 F.3d 264, 270 n. 4 (2d Cir.2006). A § 1985(3) "conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." Thomas v. Roach, 165 F.3d 137, 146 (2d Cir.1999); Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 791 (2nd Cir. 2007). Under §1986, a claim may be imposed against those in a position to prevent the aim of a §1985(3) conspiracy, but do not do so. Thus, in order to establish a violation of § 1986, a plaintiff must first establish a violation of § 1985 which the § 1986 defendant failed to prevent. Pecou v. Hirschfeld, 2008 WL 957919, 1 (E.D.N.Y.,2008).

[9] To state a claim for retaliation in violation of Title VII, a plaintiff must first establish a prima facie case of retaliation. Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d 199, 205 (2d Cir.2006). To establish a prima facie case of retaliation, a plaintiff must present evidence sufficient to permit a rational trier of fact to find that (1) he engaged in an activity protected by Title VII, (2) the employer was aware of this activity, (3) the employer took adverse action against the employee, and (4) there is a casual connection between the protected activity and the adverse action. See White v. Eastman Kodak Co., 368 Fed.Appx. 200, 201-202, 2010 WL 726629, 1 (2nd Cir. 2010).

[10] The elements required to state a claim for retaliation under Section 504 of the Rehabilitation Act are similar the plaintiff must show (1) that he engaged in protected activity; (2) that defendants retaliated against him in such a way as to deter an ordinary person from exercising his or her rights; and (3) that there was a causal connection between the protected activity and the retaliatory action. Weixel v. Bd. of Educ. of City of New York, 287 F.3d 138, 148 (2d Cir.2002); Stahura-Uhl v. Iroquois Cent. School Dist., 2011 WL 6330052, 9 (W.D.N.Y.,2011).

and took adverse action against him because of the protected activity. The same may be said with respect to the plaintiff's ADA claim.[11] The plaintiff claims that he asked for a wheelchair accessible desk to perform work for the IGRC, but that the defendants refused that request. The plaintiff further contends that the defendants took adverse action against him based, at least in part, upon his difficulty in performing IGRC work which was allegedly the result of the lack of a wheelchair accessible desk. Although Title VII, §504 and ADA cannot typically be brought against individual defendants, such claims may be maintained when asserted in a §1983 action against state officials "in their official capacity." Harris v. Mills, 572 F.3d 66 (2nd Cir. 2009); Lopez v. Fischer, 2011 WL 1233107 (W.D.N.Y. 2011). Here, the plaintiff has asserted his claims against Bernardi in both his individual and official capacities. (Second Amended Complaint at ¶ 23). West specifically asserts the §504 and ADA claims against Bernardi in his "official capacity." (Second Amended Complaint at ¶182, ¶183). Although West did not mention Bernardi when listing the defendant who allegedly violated his Title VII in ¶185 of the Second Amended Complaint, the plaintiff does assert that Bernardi directly participated in the discriminatory acts and policies which violated his Title VII rights in ¶¶136(5) and (11). Inasmuch as the plaintiff has asserted his claims against Bernardi "in his official capacity" and in light of the standard of review directed by Shomo, and Larkin v. Savage, 318 F.3d. 138 (2nd Cir.

---

[11] To state a *prima facie* failure to accommodate claim, a plaintiff must establish that "(1) her employer was subject to the ADA; (2) she was disabled; (3) she was otherwise qualified to perform the essential functions of the job; and (4) defendant had notice of the disability and failed to provide such reasonable accommodations." Johnson v. Maynard, 2003 WL 548754, at *6 (S.D.N.Y. 2003) (citing Lyons v. Legal Aid Soc'y, 68 F.3d 1512, 1515 (2d Cir.1995)); see also Timmel v. West Valley Nuclear Services Co., 2011 WL 5597350, 11 (W.D.N.Y.,2011).

2003)(Court must draw all inferences in plaintiff's favor), the plaintiff has sufficiently, for purposes of review under §1915, put the defendants on notice of the Title VII claim.

**Conclusion**

Based on the above, it is recommended that the motion to dismiss be denied, that the remaining defendants be served, and that the defendants be directed to answer the complaint.

The U.S. Marshal should be directed to serve the remaining defendants in this case.[12]  The defendants should be directed to respond to the Second Amended Complaint.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen(14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as W.D.N.Y. Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER**

---

[12] The Court notes that the docket reflects that only Case, O'Keefe, Poole, and Lauber have been served with a summons in this case. (Docket Nos. 14 and 15).  Thus, defendants Goord, Bernardi, Eagen, Henrich, Napoli, Selsky, Leclaire, Pabon, need to be served in this case.

**BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**  Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed2d 435 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and W.D.N.Y. Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

/s/ Hugh B. Scott
United States Magistrate Judge
Western District of New York

Buffalo, New York
February 15, 2012